**SEA LIFT, INC., Plaintiff-Appellee,**

v.

**REFINADORA COSTARRICENSE DE PETROLEO, S.A., a foreign corporation, referred to as Recope, Defendant-Appellant.**

No. 85–5167.

United States Court of Appeals, Eleventh Circuit.

June 27, 1986.

Corrected.

Arthur Roth, Miami, Fla., for defendant-appellant.

C. Douglas Skinner, Jay M. Levy, Hershoff and Levy, P.A., Miami, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, FAY, Circuit Judge, and PECK *, Senior Circuit Judge.

GODBOLD, Chief Judge:

This breach of contract case was tried in SD Florida. It was brought by a Florida plaintiff against a Costa Rican defendant and arose out of a contract to be performed by plaintiff for defendant in Costa Rica. The district court, 601 F.Supp. 457, held that its exercise of in personam jurisdiction over the defendant did not exceed the limits of due process. We hold to the contrary and reverse.

Sea Lift, Inc., the plaintiff, is a Florida corporation engaged in the marine salvage business. Defendant Refinadora Costarricense de Petroleo, S.A. (RECOPE) is a state-owned Costa Rican company that refines petroleum. RECOPE does not maintain an office or generally conduct business in Florida.

RECOPE owns the "booster barge" HC–24. It was using the HC–24 in a dredging operation to expand the harbor and build a new port facility at Port Moin, Costa Rica. The HC–24 took on water during a storm at Port Moin and subsequently capsized. The barge was insured through Instituto Nacional Seguros, which co-insured a portion of the coverage with Lloyd's of London. RECOPE reported the capsize to Instituto Nacional, which in turn reported to Lloyd's.

Representatives of London Salvage, a New York affiliate of Lloyd's, went to Florida to solicit Sea Lift's services in the salvage of the HC–24. The district court found that these representatives were acting for RECOPE. Officials of Sea Lift then travelled to Costa Rica to look at the barge and to determine a reasonable price for its salvage. Sea Lift telexed the proposed price from Florida to Costa Rica.[1]

---

* Honorable John W. Peck, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

1. RECOPE's account of the negotiations differs. According to RECOPE the contract was negotiated in Costa Rica, subject to approval by the companies' respective boards. The district court found only that a price "was eventually agreed upon." Given the posture of the case we follow Sea Lift's account of the facts where there is a divergence except where that account is contradicted by findings of the district court.

RECOPE signed the contract in Costa Rica and sent it to Miami, where it was signed by Sea Lift.

The contract is a standard form "No Cure-No Pay" salvage agreement approved and published by Lloyd's. This standard agreement is, as the district court found, "the most widely used salvage contract in the world." The standard form was modified to include a fixed price of $265,000 for the salvage; the standard clause would have provided for arbitration to determine Sea Lift's compensation. There was also an added provision by which the parties agreed to form a separate contract after the salvage operation to restore the barge to operating condition for the sum of $105,-000. The modification and the addition were the only substantive changes made on the standard form. The standard form provides that the agreement is to be governed by English law.

Shortly after the contract was executed Sea Lift dispatched two vessels to Costa Rica to undertake the salvage. The operation did not go smoothly, however, and when it was complete RECOPE refused Sea Lift's demands for payment. Sea Lift brought suit against RECOPE and other parties in federal district court in Florida. The other defendants were dismissed and, after a bench trial, judgment was entered for Sea Lift.

■ On this appeal RECOPE contends that the district court was without in personam jurisdiction, that venue was improper and that Sea Lift's representations about when work would begin were erroneously discounted by the district court. Because we conclude that the exercise of in personam jurisdiction over RECOPE exceeded the limits of due process,[2] we do not reach RECOPE's other contentions.

■ To determine whether the exercise of in personam jurisdiction is consistent with due process[3] we must determine whether RECOPE had "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055 (11th Cir.1986), *quoting International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The due process clause permits a state to exercise "general jurisdiction" over the person of a foreign corporation "if there are continuous and systematic general business contacts between the state and the foreign corporation, even if the cause of action does not relate to [the defendant's] activities in the forum state." *Borg-Warner*, 786 F.2d at 1057; *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 413–14 & n. 9, 104 S.Ct. 1868, 1872 & n. 9, 80 L.Ed.2d 404 (1984); *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *see also, McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). Here the district court found that RECOPE does not engage in general business activity in Florida. Sea Lift does not contest this finding. Therefore RECOPE is not constitutionally subject to "general" in personam jurisdiction in Florida.

See *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 491 (5th Cir.1974); *accord Neiman v. Rudolf Wolff & Co.*, 619 F.2d 1189, 1190 (7th Cir.), *cert. denied*, 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980).

2. Alien corporations enjoy this protection of the due process clause. *See Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1362 (7th Cir.1985) (noting that this proposition "is too solidly entrenched to be questioned at this late date ..."), *citing, e.g., Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Southwire Co. v. Trans-World Metals*, 735 F.2d 440

(11th Cir.1984). This protection exists despite the fact that the domestic plaintiff is not guaranteed an alien forum. *Cf. Carbon Processing, Co. v. Lapeyrouse Grain Corp.*, 779 F.2d 1541 (11th Cir.1986) (commerce clause opens Alabama courts to Ohio corporate plaintiff's suit arising from interstate transaction, despite Alabama "qualification" statute) and see note 4, *infra.*

3. This constitutional issue is of course subject to plenary review, and "each case must be decided on its own facts," *Southwest Offset, Inc. v. Hudco Pub. Co.*, 622 F.2d 149, 151 (5th Cir.1980).

■ We must also determine whether the person of RECOPE is within the "specific jurisdiction" of Florida courts. This inquiry involves the question whether the case "arises out of" or "relates to" RECOPE's contacts with the state of Florida. *See Helicopteros*, 466 U.S. at 414 n. 8, 104 S.Ct. at 1872 n. 8. If the case does so arise and relate, we must then consider " 'the relationship among the defendant, the forum, and the litigation' to determine whether the exercise of jurisdiction [is] consistent with due process." *Borg-Warner*, 786 F.2d at 1057, *quoting Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977). This relationship will not support the exercise of in personam jurisdiction unless it includes "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Elkhart Eng'g Corp. v. Dornier Werke*, 343 F.2d 861, 866 (5th Cir.1965), *quoting Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).[4] "Considerations such as the quality, nature, and extent of the activity in the forum, the foreseeability of consequences within the forum from activities outside it ... relate to whether it can be said that the defendant's actions constitute 'purposeful availment.' " *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1268 (5th Cir.1981).

The district court considered the following to be relevant contacts between RECOPE and Florida: the solicitation of Sea Lift by RECOPE agents present in Florida for that specific purpose, the sending of the standard form contract to Sea Lift in Florida to be signed and executed, and RECOPE's failure "to perform an act required by the contract to be performed in Florida," *i.e.*, failure to pay Sea Lift in U.S. dollars. We agree that this case arises out of and relates to these contacts, but we cannot conclude that they show that RE-

COPE has invoked the benefits and protections of Florida law.

■ The mere "foot-fall" of the defendant's agents "on the State's soil" does not in the relevant sense invoke the benefits and protections of the laws of the forum. *Wisconsin Elec. Mfr. Co. v. Pennant Prods., Inc.*, 619 F.2d 676, 678 n. 8 (7th Cir.1980), *quoting Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc.*, 239 F.2d 502, 509 (4th Cir.1956). Nor does the existence of a contract between the foreign defendant and a resident of the forum state automatically amount to "purposeful availment." *See Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1362 (7th Cir.1985), *citing Burger King Corp. v. Rudzewicz*, — U.S. —, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985). A contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King*, 105 S.Ct. at 2185, *quoting Hoopeston Canning Co. v. Cullen,* 318 U.S. 313, 316–17, 63 S.Ct. 602, 604–05, 87 L.Ed. 777 (1943). This case thus raises the often difficult question of what, beyond the bare contract, must be present to satisfy the "minimum contacts" rule? *See Burger King*, 105 S.Ct. at 2185 & n. 21 (citing discussions).

■ A meeting in the forum state may constitute "purposeful availment" if it involves "significant negotiations of important terms." *Neiman v. Rudolf Wolff & Co.*, 619 F.2d 1189, 1194 & n. 5 (7th Cir. 1980); *see also Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1029 (5th Cir.1983), *cert. denied*, 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 561 (1984). This case concerns a contract that is entirely boilerplate. The price term, the only departure from Lloyd's standard form salvage

---

**4.** Sea Lift does not allege that no forum other than Florida is available to it. Such an allegation would in any case go to the question of "fair play and substantial justice", and thus would not become relevant to the due process

analysis until the "minimum contacts" threshold had been surmounted. *See Burger King v. Rudzewicz,* — U.S. —, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985); *Hanson v. Denckla. But see Afram Export,* 772 F.2d at 1363–64.

contract, was negotiated by telex.[5] The meeting in Florida between RECOPE's agents and Sea Lift was therefore properly characterized by the district court as a "solicitation."

 A direct solicitation [6] by a foreign defendant of the business of a forum resident has been held to be "purposeful availment" in cases where either a continuing relationship, *see Southwest Offset, Inc. v. Hudco Pub. Co.*, 622 F.2d 149, 152 (5th Cir.1980); *Standard Fittings Co. v. Sapag, S.A.*, 625 F.2d 630, 642 n. 23, 643–44 (5th Cir.1980), *cert. denied*, 451 U.S. 910, 101 S.Ct. 1981, 68 L.Ed.2d 299 (1981), or some in-forum performance on the part of the plaintiff, *see Madison Consulting Group v. South Carolina*, 752 F.2d 1193, 1204 (7th Cir.1985); *Afram Export*, 772 F.2d at 1364; *but see Hydrokinetics*, 700 F.2d at 1029 (plaintiff's performance in forum state discounted), was contemplated. *Cf. Benjamin v. Western Boat Bldg. Corp.*, 472 F.2d 723 (5th Cir.), *cert. denied*, 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 64 (1973); *Charia v. Cigarette Racing Team, Inc.*, 583 F.2d 184 (5th Cir.1978). Here, RECOPE sought Sea Lift's assistance in a one-shot operation. Although some in-Florida preparation by Sea Lift was perhaps foreseeable, Sea Lift's duties were to be performed exclusively in Costa Rica.[7] This is not a case in which solicitation rose to the level of purposeful availment.

By its own terms the contract is to be governed by the law not of Florida, but of England. In a case involving parties of presumably equal bargaining power, the choice of English law to govern the agreement is in itself an indication that RECOPE did not avail itself of the benefits and protections of Florida law. *See Hydrokinetics*, 700 F.2d at 1029; *cf. Gold Kist, Inc. v. Baskin-Robbins Ice Cream*, 623 F.2d 375, 381 n. 4 (5th Cir.1980) (clause choosing

forum law to govern a continuing business relationship showed purposeful availment).

That the contract price was stated in U.S. dollars is of little significance. The district court relied on the Florida law presumption that, absent an express provision to the contrary, a debt is payable at the creditor's place of business. Even if we follow Florida law in this respect, however, we do not get appreciably nearer to purposeful availment. The actual mailing of payments to the forum state has been held not to weigh heavily in this determination. *Hydrokinetics*, 700 F.2d at 1029. A presumptive duty regarding place of payment under forum law is entitled to no greater weight here.

In sum, RECOPE's activities do not show that it purposefully availed itself of the benefits and protections of Florida law. RECOPE therefore was not properly within the personal jurisdiction of the district court.

REVERSED.

---

**5.** The record and briefs do not indicate where and when the sole additional term, which related to refurbishing the barge, was negotiated.

**6.** Scattershot solicitations of business in the forum state are likely to fall within the ambit of *McGee v. International Life*. *See Vencedor Mfg. Co. v. Gougler Indus.*, 557 F.2d 886, 891 (1st

Cir.1977); *Hardy v. Pioneer Parachute Co.*, 531 F.2d 193 (4th Cir.1976).

**7.** Sea Lift does not assert that the collateral agreement to refurbish would have required it to perform in Florida.