Sarkis **SOGHANALIAN**, Plaintiff,

v.

Zaven **SOGHANALIAN** and Raymond L. Garavito, Defendants.

No. 84–2515–CIV.

United States District Court, S.D. Florida, N.D.

June 27, 1988.

Gerald F. Richman, Miami, Fla., for plaintiff.

Charles C. Kline, Howard L. Kuker, Miami, Fla., for defendants.

## OMNIBUS ORDER

ZLOCH, District Judge.

THIS MATTER is before the Court upon Plaintiff, Sarkis Soghanalian's, Motion To Dismiss For Lack Of Subject Matter Jurisdiction, Or Alternatively, Based Upon Forum Non Conveniens (DE 247); Defendant,

Zaven Soghanalian's, Motion To Dismiss Counter–Counterclaim And Memorandum Of Law (DE 266); Defendants, Zaven Soghanalian and Raymond L. Garavito's, Motion For Contempt (DE 249); Plaintiff, Sarkis Soghanalian's, Motion To Strike Defendants' Motion For Contempt And Memorandum In Support Thereof (DE 268); Plaintiff, Sarkis Soghanalian's, Motion To Strike And Memorandum In Support Thereof (DE 275); and Plaintiff, Sarkis Soghanalian's, Motion To Strike And Memorandum Of Law In Support Thereof (DE 276).

In making the following Findings of Fact and Conclusions of Law, the Court has carefully considered the aforementioned Motions, the attached exhibits and the oral argument of able counsel for each side.

## FINDINGS OF FACT

1. The Plaintiff, Sarkis Soghanalian ("Sarkis"), filed a Complaint for the intentional infliction of emotional distress (DE 1) against Defendants, Zaven Soghanalian and Raymond Garavito.

2. The Defendant, Zaven Soghanalian ("Zaven"), filed a Counterclaim for breach of partnership agreement, action on order of payment, conversion, alternative claim of quantum meruit and a claim for constructive trust (DE 51) against Plaintiff, Sarkis Soghanalian.

3. The Plaintiff, Sarkis Soghanalian, filed a Counter–Counterclaim alleging civil theft and a claim for constructive trust (DE 236) against Defendant, Zaven Soghanalian.

4. In all of the claims, jurisdiction is predicated upon diversity of citizenship, 28 U.S.C. Section 1332.

5. This is an action for damages which exceeds Ten Thousand $10,000.00 Dollars, exclusive of interest and costs.

6. Plaintiff, Sarkis, is a citizen of Lebanon and a resident of Dade County, Florida.

7. Defendant, Raymond Garavito, is alleged, upon information and belief, to be a citizen of the State of Florida.

8. Defendant, Zaven, is alleged, upon information and belief, to be a citizen of the State of New York.

9. The Defendant, Zaven, stated in a deposition held on August 18, 1987 that in 1984, at the time the lawsuit was filed, his residence and domicile were Geneva, Switzerland. This response was further clarified in the next day of the deposition, August 19, 1987, when Zaven was asked if he understood "... essentially domicile means that that's the place that you intend to return to when you leave, that's where you are going back to and consider your home?" Zaven responded affirmatively and stated that in 1984 until now that place was Geneva, Switzerland. Furthermore, in a deposition taken on December 17, 1985, Zaven gave his present address as Geneva, Switzerland and stated the total number of days spent in New York last year was "maximum 20 days, 25 days. Twenty days all together." (Exhibit 9, DE 247). Additionally, Zaven gave his domicile as the Geneva address to courts in Switzerland and France throughout this time. (Exhibits 1–8, DE 247).

10. The Defendant, Zaven, stated the following facts in an affidavit signed September 23, 1987: He has maintained a permanent residence in Binghamton, New York since February 9, 1960; his wife and two children, a two year old and a four year old, spend most of the year in Binghamton; his household furnishings are in New York; for the past twenty years, he has maintained a telephone directory listing and paid utility bills in New York; he receives mail in New York; since 1979, he has been registered to vote in New York; since 1961, he has had a New York driver's license and he owns two motor vehicles registered in New York State; and for approximately seventeen years, he has had a checking account in New York. In the depositions, "he did not understand the legal difference between 'domicile' and 'residence' and that the remainder of the questions on the point were confusing and unclear" and that he initially did not consider the Geneva address to be his domicile but it was his address. Zaven also states "... although his business requires him to trav-

el most of the year, he always intends to return" and does in fact return to his family in Binghamton, New York when his business is concluded. (Exhibit A, DE 263).

11. Defendant, Zaven, also stated in his affidavit signed September 23, 1987, many facts regarding his residence in Geneva, Switzerland. He had a work permit in Switzerland which expired June 1, 1984; he does not have a current work permit since he can stay in Switzerland eighty-nine (89) consecutive days without a permit and he does not stay in Switzerland for more than eighty-nine days at a time. (Exhibit A, DE 263). Further, a final judgment entered by the Swiss Tribunal De Premiere Instance on May 21, 1987, states Zaven Soghanalian presented a certificate of verification status "pursuant to which he is authorized to reside in Geneva for a total period of, at most, 90 days within one year, namely June 1, 1983, to May 1, 1984." The judgment also showed Zaven was a lessee under a two-year lease at the Geneva, Switzerland address and maintained a telephone directory there. (Exhibit B, DE 263).

12. The Defendant, Zaven, states in a deposition taken August 19, 1987 that he is an American and Lebanese citizen. Zavan has not formally renounced his Lebanese citizenship, but he turned in his Lebanese passport to the consulate in New York and has not been to Lebanon since 1978. (Exhibit 9, DE 247).

13. Defendant, Zaven, states in his affidavit dated September 23, 1987 that "he became an American citizen in 1979 and that he was required to renounce his allegiance to Lebanon at that time." (Exhibit A, DE 263). Zaven Soghanalian became an American citizen through the naturalization process (papers dated March 23, 1979). (Exhibit F, Page 2, DE 263).

## CONCLUSIONS OF LAW

1. The test in the 11th Circuit to determine domicile is set forth in *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir.1974) as follows: "A person's domicile is the place of 'his true, fixed and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom....'" In the case at bar, the Court finds Zaven's place of true, fixed and permanent home to be in Binghamton, New York. In New York, Zaven has had a permanent home since 1960, and his wife and young children reside there most of the year. (Exhibit A, DE 263). Furthermore, in Geneva, Zaven has only a two-year lease and more importantly, he does not have a work permit and under Swiss law, he cannot remain in Switzerland longer than eighty-nine days per year. (Exhibits A & B, DE 263). The Court thus finds the facts show Zaven's permanent home to be in New York.

■ The Court is faced with a more difficult question as to the second prong in determining where Zaven has the intention of returning whenever he is absent therefrom. Defendant, Zaven, has made contradictory statements regarding where his intention to return would be. In his deposition testimony, Zaven stated he intended to return to Geneva. (Exhibit 9, DE 247). In his affidavit, Zaven has stated he intended to return to New York. (Exhibit A, DE 263). Words, as in this case, sometimes do not show one's intention to establish domicile. Thus, the Court must look to his entire course of conduct as the controlling factors of determining domicile. *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir.1954). In looking to Zaven's course of conduct, many facts suggest Binghamton, New York to be where Zaven intends to return, such as his wife and children's place of residence, his ownership of a house, his New York driver's license, his New York registration of motor vehicles, his voter's registration, his New York checking account, his New York telephone directory and payment of New York utility bills. (Exhibit A, DE 263). The facts which suggest Zaven's intent to return to Geneva include his maintenance of leased property and his Geneva telephone directory. (Exhibit B, DE 263). The facts also show Zaven spent no more than twenty-five days in New York during 1984 (Exhibit 9, DE 247) and could not legally spend more than eighty-nine days per year in Geneva. (Exhibit B, DE 263). The Court, looking to Zaven's course of conduct, finds

sufficient facts to show the place Zaven intended to return to whenever he is absent therefrom to be Binghamton, New York. Therefore, the Court finds the Defendant, Zaven Soghanalian's, place of domicile to be Binghamton, New York.

2. The Court next must determine whether to recognize the alleged Lebanese citizenship of the Defendant, Zaven Soghanalian. In this case, diversity was alleged based on the belief that Plaintiff, Sarkis Soghanalian, was a citizen of Lebanon while Defendant, Zaven Soghanalian, was a citizen of New York and Defendant, Raymond Garavito, was a citizen of Florida. The Plaintiff now asserts Defendant, Zaven, is also a citizen of Lebanon and asks the Court to recognize this citizenship and, therefore, dismiss the action since both the Plaintiff and one Defendant would be aliens and no diversity would exist. *De Wit v. KLM Royal Dutch Airlines, N.V.,* 570 F.Supp. 613 (S.D.N.Y.1983).

Generally, the test to determine whether a person is a foreign citizen for purposes of 28 U.S.C. Section 1332(a)(2) is "whether the country in which citizenship is claimed would so recognize him." *Sadat v. Mertes,* 615 F.2d 1176, 1183 (7th Cir.1980). In the case at bar, Defendant, Zaven has never gone through an official Lebanese procedure to renounce his Lebanese citizenship. He has turned over his Lebanese passport to the consulate in New York. (Exhibit 9, DE 247). Also, when Zaven became a naturalized citizen, he was required to swear allegiance to the United States and renounce all allegiance to any foreign state. (Exhibit F, DE 263 and *Sadat,* 615 F.2d at 1184). However, this Court does not have the facts before it to determine whether Lebanon would still recognize Zaven Soghanalian as its citizen.

Recognizing this situation, this Court may proceed by looking at the differing results should Lebanon recognize Zaven's citizenship or not. If Lebanon did not recognize Zaven's Lebanese citizenship, Zaven would be considered solely an American citizen and diversity jurisdiction would be present. If Lebanon did recognize Zaven's Lebanese citizenship, Zaven would

have dual nationality and thus, the issue before the Court would be whether United States courts recognize the foreign citizenship of a dual national for the purposes of 28 U.S.C. Section 1332(a)(2).

This issue, one of first impression in the 11th Circuit, has been thoroughly analyzed in the case of *Sadat v. Mertes,* 615 F.2d 1176 (7th Cir.1980). First, the *Sadat* court in analyzing the two District Court decisions on the issue of whether to recognize the foreign citizenship of a dual national stated the considerations of complete diversity arguably should have controlled the District Court decisions. *Sadat,* 615 F.2d at 1186. This Court in determining whether to recognize the foreign citizenship of a dual national, then should consider the rule of complete diversity which would require the Court not to recognize the Lebanese citizenship, for to do so would violate the dictates of complete diversity.

The *Sadat* court also suggested "the paramount consideration should be whether the purpose of alienage jurisdiction to avoid international discord would be served by recognizing the foreign citizenship of the dual national." *Sadat,* 615 F.2d at 1186–1187. The *Sadat* court discussed the international law principles regarding a country's responsibility for the actions which affect dual nationals and suggest that a foreign country should not be offended by actions to a dual national if that person is treated as all other Americans would be treated. Thus, for these reasons, the *Sadat* court suggests only the American citizenship be recognized. In the case at bar, if this Court were to recognize only the American citizenship, Zaven would attain the same benefits accorded any other American citizen. Alternatively, if the Court recognized the Lebanese citizenship in this case, Zaven would not have the same rights as any other American. Thus, to recognize the Lebanese citizenship would not serve the purpose of alienage jurisdiction to avoid international dispute.

Finally, the *Sadat* court discusses an exception to the above-mentioned principle such that a country should be responsible for wrongful conduct to a dual national if

the person's effective or dominant nationality is the foreign state. The exception would be applied if his dominant nationality, by residence or association is that of the other state and he has shown an intent to be a national of the other state and taken all reasonable steps to terminate his status as a national of the respondent state. *Sadat*, 615 F.2d at 1187. In the case at bar, quite simply this exception does not apply. In analyzing Zaven's dominant nationality of either the United States or Lebanon in terms of residence, association or an intent to be a citizen, Zaven's dominant nationality is clearly in the United States. He owns a home in the United States and he has turned in his Lebanese passport evidencing an intent not to be considered a Lebanese citizen. (Exhibit A, DE 263 and Exhibit 9, DE 247). For all of the reasons discussed above, this Court would not recognize the Lebanese citizenship of Zaven if he has dual citizenship and, therefore, diversity would still exist under 28 U.S.C. Section 1332(a).

■■■ 3. The doctrine of forum non conveniens historically was established to allow the defendant to change the venue of the case to a more convenient forum. The lead case in this area, *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947), has explained, "[i]t is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy." Thus, the doctrine protects the interests of the defendant, who does not have the choice of forum and whose rights may be severely restricted by the plaintiff's choice of forum. Further, the doctrine should be applied sparingly only when the defendant's concerns are very strong. In the case at bar, the Plaintiff is asking the Court to apply the doctrine of forum non conveniens when the Plaintiff alone had complete control to choose the best forum for the litigation. Thus, the Court does not find the principle of forum non conveniens to apply in this setting.

4. The test to determine whether the Counter–Counterclaim is compulsory as set forth in *Plant v. Blazer Financial Services, Inc. of GA.*, 598 F.2d 1357 (5th Cir.1979) is the logical relation test. This case defines " 'logical relationship' to exist when the counterclaim arises from the same 'aggregate of operative facts' in that the same operative facts serve as the basis of both claims ..." *Plant*, 598 F.2d at 1361. In the case at bar, the Counterclaim is premised upon an alleged partnership agreement regarding the sale of arms from Sofma to Iraq in the Vulcan contract. Moreover, the Counter–Counterclaim is premised upon the lack of a partnership agreement regarding the sale of rockets from Rumania to Iraq. The Court finds the issue of whether there is a partnership agreement between Sarkis and Zaven to be the core of operative facts from which both claims arise. Therefore, the Court finds the Counter–Counterclaim to be compulsory. Further, the Court finds the timely filing of Zaven's Counterclaim within the five-year statute of limitations tolls the statute as it would apply to the compulsory Counter–Counterclaim. 6 Wright & Miller, *Federal Practice and Procedure* 1419 (1987).

Accordingly, it is

ORDERED AND ADJUDGED as follows:

1. Plaintiff, Sarkis Soghanalian's, Motion To Dismiss For Lack Of Subject Matter Jurisdiction Or, Alternatively, Based Upon Forum Non Conveniens (DE 247) be and the same is hereby DENIED;

2. Defendant, Zaven Soghanalian's, Motion To Dismiss Counter–Counterclaim And Memorandum Of Law (DE 266) be and the same is hereby DENIED. However, the Court hereby orders the Plaintiff, Sarkis Soghanalian, to amend the Counter–Counterclaim to allege the proper statute under which a private cause of action arises within ten (10) days of the date of this Order. Failure to amend the Counter–Counterclaim may result in the dismissal of the Counter–Counterclaim, sua sponte, by the Court without further notice to the parties;

3. Defendants, Zaven Soghanalian and Raymond Garavito's, Motion For Contempt (DE 249) be and the same is hereby DENIED. The Court hereby orders the deposition of Antoine Khater must be taken within forty-five (45) days of the date of this Order;

4. Plaintiff, Sarkis Soghanalian's, Motion To Strike Defendants' Motion For Contempt (DE 268) be and the same is hereby DENIED;

5. Plaintiff, Sarkis Soghanalian's, Motion To Strike And Memorandum Of Law (DE 275) be and the same is hereby DENIED; and

6. Plaintiff, Sarkis Soghanalian's, Motion To Strike And Memorandum Of Law In Support Thereof (DE 276) be and the same is hereby DENIED.