854 F.2d 389
 CORRECTED OPINION
WILLIAMS ELECTRIC COMPANY, INC., Plaintiff-Appellant,
v.
HONEYWELL, INC., and John Geis, Defendants,
J.V. Clark Electric Company, Inc., and William Warren
Harmon, Defendants- Appellees.
WILLIAMS ELECTRIC COMPANY, INC., Plaintiff-Appellant,
v.
HONEYWELL, INC., J.V. Clark Electric Company, Inc., William
Warren Harmon, Defendants,
John Geis, Defendant-Appellee.
 Nos. 87-3235, 87-3402.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 15, 1988.
 
 Bert Moore, Moore & Moore, P.A., Niceville, Fla., for plaintiff-appellant.
 Robert P. Gaines, Beggs & Lane, Pensacola, Fla., for defendants-appellees.
 James M. Landis, Carlton, Fields, Ward, Emmanuel, Smith, Cutter & Kent, P.A., Judith W. Simmons, Foley & Lardner, Tampa, Fla., for Geis.
 Appeals from the United States District Court for the Northern District of Florida.
 Before HILL, Circuit Judge, HENDERSON*, Senior Circuit Judge, and MURPHY**, District Judge.
 PER CURIAM:
 
 
 1
 Williams Electric Company, Inc. ("Williams Electric"), a Florida corporation, appeals from the dismissal of its complaint against J.V. Clark Electric Company, Inc. ("Clark Electric"), John Geis and William Warren Harmon by the United States District Court for the Northern District of Florida for lack of personal jurisdiction. We reverse.
 
 
 2
 On September 24, 1982, the United States Air Force awarded Williams Electric a prime contract for the construction of a new electrical switching station at Sheppard Air Force Base in Wichita Falls, Texas. A provision of this contract required that all work on the Energy Monitoring and Control Systems ("EMCS") at the base be completed as recommended by or under the supervision of Honeywell, Inc. ("Honeywell"), who originally had installed the EMCS.
 
 
 3
 Honeywell insisted on tying any recommendations to Williams Electric to a subcontract to purchase Honeywell products for the EMCS portion of the contract and for certain sections of the contract that were unrelated to EMCS. Honeywell also required Williams Electric to enter into a subcontract with Clark Electric, a Texas corporation, for the installation of Honeywell EMCS products at the switching station.
 
 
 4
 Before these proposed subcontracts were executed, Harmon and Geis, representing Clark Electric and Honeywell respectively, met with Harvey Williams, the president of Williams Electric, in Okaloosa County, Florida. During this meeting, Geis disclosed to Williams that if his company did not enter into a subcontract with Clark Electric, then Honeywell would not sign an agreement with Williams Electric. The district court found that, during these negotiations in Okaloosa County, material changes were made to the proposed subcontracts. These subcontracts were then executed in Florida.
 
 
 5
 On November 6, 1986, Williams Electric filed this action in the United States District Court for the Northern District of Florida against Honeywell, Clark Electric, Geis and Harmon alleging federal and Florida antitrust violations. Honeywell answered the complaint and is not a party to these appeals. Clark Electric and Harmon moved to quash service of process because they claimed the district court lacked personal jurisdiction over them. Geis filed a motion to dismiss on the same ground. After a hearing, the district court granted the appellees' motions.
 
 
 6
 In order for the district court to exercise personal jurisdiction over Geis, Harmon and Clark Electric sufficient "minimum contacts" with Florida must be present to satisfy due process requirements. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). The contacts must also meet the requirements of the state long-arm statute. See Gold Kist, Inc. v. Baskin-Robbins Ice Cream Co., 623 F.2d 375, 377 (5th Cir.1980).[1]
 
 
 7
 Harmon and Geis maintain that the court cannot exercise personal jurisdiction over them because they acted in their representative, not individual, capacities. Indeed, a court cannot exercise personal jurisdiction over a defendant solely on the basis of his employer's contacts with the forum state. Calder v. Jones, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804, 813 (1984). However, as Calder explained, a defendant's "status as [an] employee does not somehow insulate [him] from jurisdiction." Id. The critical inquiry is whether the individual defendant can incur personal liability for his acts in the forum. Delong Equipment Co. v. Washington Mills Abrasive, 840 F.2d 843, 852 (11th Cir.1988). In Delong, this court, in finding jurisdiction over an individual defendant in an antitrust action brought under the same provisions as the one brought by Williams Electric, observed that under the Clayton Act an individual employee could be held liable "for any illegal actions he authorized, ordered, or in which he participated" while acting in his corporate capacity. Id. (citing 15 U.S.C. Sec. 24). Therefore, we reject the contention of Harmon and Geis that their representative status puts them beyond the reach of the Florida court's jurisdiction. We assess their contacts with Florida just as we examine Clark Electric's contacts. In determining if the assumption of personal jurisdiction over a non-resident defendant comports with due process, a two-part analysis must be made in accordance with the dictates of International Shoe and its progeny. We must first ascertain whether Harmon, Geis and Clark Electric purposefully established "minimum contacts" with the forum state. Id. at 316, 66 S.Ct. at 158, 90 L.Ed. at 102; Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir.1988). If the requisite minimum contacts do exist, we must then decide whether the forum's exercise of personal jurisdiction over the non-resident defendants would offend "traditional notions of fair play and substantial justice." International Shoe, 326 U.S. at 316, 66 S.Ct. at 158, 90 L.Ed. at 102; Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92, 105 (1987); Morris, 843 F.2d at 492.
 
 
 8
 The Supreme Court of the United States has noted that there are two types of personal jurisdiction: specific and general. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 n. 8 & 9, 104 S.Ct. 1868, 1872 n. 8 & 9, 80 L.Ed.2d 404, 411 n. 8 & 9 (1984). Here we are only concerned with the exercise of specific jurisdiction over the defendants. Specific jurisdiction derives from a party's contacts with the forum that are related to the cause of action. Id. at 414 n. 8, 104 S.Ct. at 1872 n. 8, 80 L.Ed.2d at 411 n. 8.[2] For the purpose of this litigation the appellees' sole contact with Florida occurred when Harmon, on behalf of Clark Electric, and Geis, representing Honeywell, met with Williams in Okaloosa County, Florida in 1983. The question becomes whether this single incident is of such a nature that the corporations and their representatives "should reasonably [have] anticipate[d] being haled into court [in Florida]." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501 (1980).
 
 
 9
 Williams Electric contends that the alleged antitrust violations constitute an intentional tort, and, therefore, it is reasonable that Harmon, Geis and Clark Electric would anticipate being held accountable for such behavior in Florida. Alternatively, the appellant insists that even if the purported illegal conduct cannot be characterized as an intentional tort, the significant negotiations that occurred in Florida are sufficient minimum contacts with that state to satisfy the due process clause.
 
 
 10
 A forum may exercise personal jurisdiction over a foreign defendant if that defendant purposefully directs its activities at the residents of the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182-83, 85 L.Ed.2d 528, 540-41 (1985). This court has observed that such a purpose occurs when "[a] meeting in the forum state ... involves 'significant negotiations of important terms' " of a contract. Sea Lift, Inc. v. Refinadora Costarricense Petroleo, S.A., 792 F.2d 989 (11th Cir.1986) (quoting Neiman v. Rudolf Wolff & Co., 619 F.2d 1189, 1194 & n. 5 (7th Cir.1980)). Given the directive of Sea Lift, we conclude that, for the purposes of our due process analysis, Harmon, Geis and Clark Electric consciously directed their activities toward Florida, thus availing itself of the "benefits and protections" of Florida law. Burger King, 471 U.S. at 475-76, 105 S.Ct. at 2184, 85 L.Ed.2d 542-43. Geis and Harmon, representing Honeywell and Clark, went to Florida to negotiate terms of two proposed subcontracts. As a result of these negotiations, the district court found that material changes were incorporated into the proposed subcontracts. Williams Electric then signed the subcontracts under protest. These events indicate that "significant negotiations of important terms" occurred during the meeting in Okaloosa County, Florida. Thus, by going to Florida to negotiate with Williams Electric, the defendants intentionally availed themselves of the "benefits and protections" of that state's laws. Consequently, the exercise of personal jurisdiction by the district court in Florida would not offend the due process clause.[3]
 
 
 11
 The appellees argue that the district court's finding that material changes to the proposed subcontracts occurred in Florida is clearly erroneous. They insist that the final agreement, which was executed in Florida, left the proposed subcontracts, which were drafted in Texas, essentially unchanged. We disagree. The record reveals that the subcontracts, executed in Florida, reflected changes in the timing of the commencement of the project, the work to be completed, the responsibility for the payment of the bond and the timing of Williams Electric's payments to the subcontractors. From an examination of this evidence, we are not left with the "definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, North Carolina, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 528 (1985).
 
 
 12
 Having found sufficient minimum contacts with Florida, we turn next to whether the exercise of personal jurisdiction over the appellees would offend traditional notions of fair play and substantial justice. As the Supreme Court has noted, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the defendant." Asahi Metal Industry Co. v. Superior Court of California, Solano County, 480 U.S. 102, 114, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92, 105-06 (1987). Such burdens are justified in this case.
 
 
 13
 Although the defendants would be compelled to travel to Florida to defend this lawsuit, modern improvements in transportation and communication significantly lessen this hardship. See World-Wide Volkswagen v. Woodson, 444 U.S. 286, 292-93, 100 S.Ct. 559, 564, 62 L.Ed.2d 490, 498-99 (1980). More significant is the purposeful journey to Florida to conduct important contract negotiations. This deliberate choice placed the defendants on notice that they were subject to suit in Florida. Harmon, Geis and Clark Electric could have acted differently had they wanted to alleviate that risk. Id. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501. Finally, because Williams Electric is a Florida corporation, the appellees cannot maintain that the forum state does not have significant interests in this dispute. See Asahi, 480 U.S. 114-15, 107 S.Ct. at 1034, 94 L.Ed.2d at 106. In sum, Harmon, Geis and Clark Electric have failed to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable" given the existence of minimum contacts. Burger King v. Rudzewicz, 471 U.S. 462, 477, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528, 544 (1985).
 
 
 14
 Our inquiry does not end here, however. We must also examine whether the forum's exercise of personal jurisdiction over the defendants would satisfy the Florida long-arm statute, which requires more activities or contacts to confer personal jurisdiction than those demanded by the Constitution. Mallard v. Aluminum Co. of Canada, Ltd., 634 F.2d 236, 241 (5th Cir.), cert. denied, 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981).
 
 
 15
 The relevant portion of the long-arm statute allows a federal district court in Florida to exercise personal jurisdiction over any person who "[c]ommits a tortious act within [Florida]."[4] Williams Electric maintains that the negotiation and execution in Florida of contracts that allegedly violate antitrust laws constitute sufficient contacts to establish jurisdiction under the tortious activity provision of the long-arm statute. The appellees reply that if a tort was committed, then it was committed in Texas, where the alleged conspiracy to violate antitrust laws had its genesis.
 
 
 16
 First, we must decide whether the alleged violations of the federal and Florida antitrust laws constitute "tortious behavior" within the meaning of the Florida long-arm statute. Although this court's predecessor has held that federal antitrust law "does not purport to afford remedies for all torts committed by or against persons engaged in interstate commerce," Larry R. George Sales Co. v. Cool Attic Corp., 587 F.2d 266, 272 (5th Cir.1979) (construing the Sherman Act), antitrust violations do encompass some business torts. A.D.M. Corp. v. Sigma Instruments, Inc., 628 F.2d 753, 754 (1st Cir.1980). Given the unreasonable effect these violations have on competition, we conclude that such activity is tortious.[5]
 
 
 17
 For personal jurisdiction to attach under the "tortious activity" provision of the Florida long-arm statute, the plaintiff must demonstrate that the non-resident defendant "committed a substantial aspect of the alleged tort in Florida." Watts v. Haun, 393 So.2d 54, 56 (Fla. Dist.Ct.App.1981). The court in Watts noted that such a showing is properly made by establishing that the activities in Florida "w[ere] essential to the success of the tort." Id. at 56. In its complaint Williams Electric alleged, inter alia, that Honeywell and Clark agreed to tie Honeywell's recommendations to Williams Electric's signing of a subcontract with Clark. Until this subcontract was negotiated and executed, events which occurred in Florida, there was no resulting damage to Williams Electric. We agree with Williams Electric that the negotiation and execution of the subcontracts were essential to the success of the tort. The district court, then, had personal jurisdiction over the principal actors in the procurement of the subcontracts pursuant to the Florida long-arm statute.
 
 
 18
 Accordingly, the judgment of the district court is REVERSED.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable Harold L. Murphy, U.S. District Judge for the Northern District of Georgia, sitting by designation
 
 
 [1]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir.1981), the Eleventh Circuit adopted as precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981
 
 
 [2]
 General personal jurisdiction is grounded on the defendant's contacts with the forum that are unrelated to the litigation. General personal jurisdiction comports with due process only if the defendant's contacts with the forum state are "continuous and systematic." Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A., 792 F.2d 989, 992 (11th Cir.1986)
 
 
 [3]
 In Sea Lift, this court found that the defendants had not purposefully availed themselves of the protections and benefits of the forum. Unlike the negotiations that occurred in this case, the meeting that took place in the forum state in Sea Lift involved a "boilerplate" contract that was not negotiated. 792 F.2d at 993-94
 
 
 [4]
 Fla.Stat. Sec. 48.193(1)(b) (1985)
 
 
 [5]
 See Bangor Punta Operations, Inc. v. Universal Marine Co., Ltd., 543 F.2d 1107, 1109 (5th Cir.1976) (violation of the Lanham Act constitutes federal tort of unfair competition); see also Albert Levine Associates v. Bertoni & Cotti, 314 F.Supp. 169, 171 (S.D.N.Y.1970) (violation of Clayton Act is a tort)