Sanford B. MIOT, Plaintiff,

v.

Art KECHIJIAN, Nelson P. Kelley and Larry E. Austin, Defendants.

No. 92–2896–CIV.

United States District Court, S.D. Florida.

July 15, 1993.

Alan J. Kluger, and Michael S. Perse, Kluger, Peretz, Kaplan & Berlin, P.A., Miami, FL, for plaintiff.

David J. White, and H. Mark Vieth, Proenza, White, Huck & Roberts, P.A., Miami, FL, for defendants.

HIGHSMITH, District Judge.

### OMNIBUS ORDER

THIS CAUSE came before the Court upon the following motions:

(1) Defendants Art Kechijian, Nelson P. Kelley, and Larry E. Austin's motion to dismiss the complaint for lack of personal jurisdiction.

(2) Defendants' motion to transfer and for evidentiary hearing.

For the reasons stated below, the Court denies the motions.

1462

## PROCEDURAL BACKGROUND

Plaintiff Sanford B. Miot originally brought this action against Kechijian, Kelley, and Austin in state court. The defendants subsequently removed the case to federal court on the basis of diversity jurisdiction. The action arose from the defendants' alleged breach of a written agreement, whereby the parties formed a corporation that would acquire, service, and sell debt instruments. Miot's complaint is in five counts: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) breach of fiduciary duty; (4) negligent misrepresentation; and (5) imposition of a constructive trust. In their motion to dismiss, the defendants, none of whom are Florida residents, assert that this Court lacks personal jurisdiction over them. The parties have conducted discovery for jurisdictional purposes, and have incorporated such discovery in their briefs.

## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### I. Standard of Review

When a plaintiff is seeking to bring an out of state defendant into court, the plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state. *McLean v. Church of Scientology*, 538 F.Supp. 545, 547 (M.D.Fla.1982). When a defendant challenges a court's assertion of personal jurisdiction, the plaintiff is frequently obliged to make a presentation that involves the merits of the action in the context of trying to establish jurisdiction. 4 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1068 (1987). To avoid precipitating too extensive an investigation of the merits at this stage of the litigation, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat a jurisdictional motion. *Id.* In diversity cases, this prima facie showing must satisfy the state's long-arm statute requirements, as well as constitutional due process considerations. The applicable long-arm statute is that of the state in which the

federal court sits. *Tellschow v. Aetna Cas. & Sur. Co.*, 585 F.Supp. 593, 593 (S.D.Fla.1984).

### II. Jurisdictional Facts

Miot is an individual residing in the state of Florida. Kechijian and Kelley are individuals residing in the state of North Carolina. Austin is an individual residing in the state of Kansas.

In early 1988, Miot and Bill Weiner, a third party, were introduced to Kechijian in Dade County, Miami, Florida, at Kechijian's instance. The purpose of the introductions was for Kechijian to offer Miot and Weiner investment opportunities. At that first meeting, Kechijian presented to Miot and Weiner three packages of loans which they could purchase. Miot and Weiner subsequently fronted the necessary cash for the acquisition of debt instruments by Kechijian. In the fall of 1988, at an informal meeting at Weiner's house in Dade County, Kechijian presented to Miot and Weiner an investment manual on debt instruments held by the Federal Deposit Insurance Corporation ("FDIC") and the Resolution Trust Corporation ("RTC"). At that time, Kechijian expressed an interest in engaging Miot as a partner, rather than just an investor in such a project. Shortly thereafter, Miot invested in an FDIC debt package originating in Texas, which Kechijian had acquired. Subsequently, Kechijian again solicited Miot in Florida for another investment: the collection of credit card accounts, which would be serviced through an entity entirely owned by Kechijian. Miot and Kechijian effected the purchase of these collection accounts in a transaction where Austin, and a related corporation, received a finder's fee equal to ten percent of the profits. Austin also attended a June 1989 meeting in Florida to discuss business ventures with Miot and Kechijian.

In July of 1990, Kechijian, Kelley, and Austin, met with Miot, Weiner, and others, at Miot's business office in Florida, to discuss the structuring of Magnavest Associates, Inc. ("Magnavest"), a company that would acquire debt instruments, service them, and possibly resell them for a profit. At the July meeting, the parties solidified their relationship

through the framework of Magnavest.[1] The parties agreed that Magnavest profits would be split 40% to Miot, 40% to Kechijian, 10% to Austin, and 10% to Kelley. Each of the parties also agreed to purchase stock in the corporation in the same proportions as the profits split. As a result of these discussions, Kechijian caused Magnavest to be incorporated in the state of Delaware. Kechijian also filed an application for an employer identification number for Magnavest in the state of North Carolina, which provided that Kechijian was President, Miot was the Chairman of the Board, Kelley was the Senior Vice President of Operations, and Austin was Vice President of Acquisitions. An application for a certificate of authority to operate within the state of North Carolina was also executed.

Magnavest operated for a period of time in the late summer of 1990. During that time, Florida, along with North Carolina and Kansas, were identified as Magnavest's business locations on Magnavest's letterhead. Although the parties never met again in Florida, interoffice correspondence and telephonic conversations occurred periodically with the Florida office. Included in such correspondence was the written agreement memorializing the results of the July 1990 meeting in Florida. Miot prepared this agreement in Florida and mailed it to the defendants, each of whom returned an executed signature page to the Florida office. The written agreement included specific details reflecting the parties' business relationship, including: the parties' equity ownership percentage in Magnavest; the provision of funds for the servicing of and collection of debt acquisitions; approval requirements; the types of debt packages to be acquired; and the disposition of Magnavest's cash flow.

In October 1990, the defendants informed Miot by correspondence sent to Florida that they would no longer participate in Magnavest. The termination letter gave rise to this action.

### III. Florida's Long-arm Statute

Miot asserts that the exercise of jurisdiction over the three non-resident defendants is consistent with both the Florida long-arm statute and federal due process standards. The Florida long-arm statute, *Fla.Stat.Ann.* § 48.193 (West 1981 & Supp.1993), states, in pertinent part, that a non-resident of Florida who, personally or through an agent, does any of the following acts, submits himself to the jurisdiction of Florida's courts for any cause of action arising from such acts:

> Operates, conducts, engages in, or carries on a business or a business venture in this state or has an office or agency in this state.

*Fla.Stat.Ann.* § 48.193(a) (West 1981 & Supp.1993). Because the jurisdictional analysis under this provision of Florida's long-arm statute is coextensive with the due process analysis, the Court will proceed to consider the federal due process requirements. *Cauff Lippman Co. v. Apogee Finance Group, Inc.,* 745 F.Supp. 678, 680 (S.D.Fla. 1990).

### IV. Constitutional Due Process

■ The constitutional "touchstone" for determining whether the exercise of personal jurisdiction is consistent with due process requirements revolves around whether a defendant purposefully established "minimum contacts" in the forum state. *Burger King v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The focus of "minimum contacts" analysis turns on whether a defendant's conduct and connection with the forum state are such that he could "reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodsen,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The actions of the defendant himself must be what creates a "substantial connection" with the forum state. *Johnston v. Frank E. Basil, Inc.,* 802 F.2d 418, 420 (11th Cir.1986). The defendant must have "purposefully availed himself" or "purposefully directed" his activities towards the forum state and its residents. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283, *reh'g denied sub nom., Lewis v. Hanson,* 358 U.S. 858, 79 S.Ct. 10, 3

---

1. The result of the meeting did not become memorialized in writing until August 1990. Miot's action is based on the alleged breach of this written agreement.

L.Ed.2d 92 (1958); *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183. A court must consider the quality, nature, and extent of the activity in the forum, the foreseeability of consequences within the forum from activities outside it, and the relationship between the cause of action and the contacts, to determine whether the defendant's actions constitute "purposeful availment." *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1028 (5th Cir.1983), *cert. denied*, 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 561 (1984).

A foreign defendant's direct solicitation of business from a forum resident has been held to be "purposeful availment" in cases where either a continuing relationship or some in-forum performance on the part of the plaintiff was contemplated. *Sea–Lift, Inc. v. Refinadora Costarricense*, 792 F.2d 989, 994 (11th Cir.1986). A business meeting in the forum state may constitute "purposeful availment" if it involves "significant negotiations of important terms." *Sea–Lift*, 792 F.2d at 993. The exchange of information by telephone, telex, or mail may constitute "purposeful availment" of a state's laws. *Cauff Lippman*, 745 F.Supp. at 681.

The mere "foot-fall" of a defendant "on the State's soil," however, does not invoke the benefits and protection of the laws of the forum. *Sea–Lift*, 792 F.2d at 993. Nor does the mere existence of a contract between the foreign defendants and a resident of the forum state automatically amount to "purposeful availment." *Id.* A contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King*, 471 U.S. at 479, 105 S.Ct. at 2185.

### V. Discussion

■ In light of these considerations, the Court proceeds to analyze the jurisdictional facts to determine whether each of the defendants has established the "minimum contacts" required to exercise jurisdiction in Florida.

### 1. Minimum contacts analysis for Kechijian:

Kechijian solicited the first meeting with Miot, a Florida resident, in Florida, for the purpose of establishing a continuing business relationship with the Florida resident. Thereafter, Kechijian solicited Miot in Florida on two separate occasions for investment opportunities in debt instruments held by the FDIC and RTC, as well as in the collection of credit card accounts. Moreover, Kechijian participated at the July 1990 meeting in Florida, where the parties engaged in significant negotiations regarding the structuring of Magnavest.

Although Kechijian never again met Miot in Florida, Kechijian sustained his contacts with Miot through the incorporation of Magnavest, with Kechijian as President and Miot as Chairman of the Board; the designation of Florida as a business location on Magnavest's letterhead; and the signing of the written agreement, on corporate stationary, sent by Miot from Florida. The repeated business solicitations, the business meetings, and the subsequent correspondence reflect that Kechijian purposefully directed his activities towards Florida, and Miot, a Florida resident. Thus, considering the quality, nature, and extent of Kechijian's activities with Florida, the Court finds that such activities establish the "minimum contacts" necessary to exercise personal jurisdiction over Kechijian.

### 2. Minimum contacts analysis for Austin:

Austin and a related corporation received a finder's fee, equal to ten percent of the profits, as a result of Miot's participation, through Kechijian's solicitation in Florida, in the collection of credit card accounts. Thus, Austin benefited from a relationship established in Florida. In addition to this indirect connection with Miot, Austin visited Florida twice: in 1989, and again in 1990. At both meetings, the parties engaged in significant negotiations regarding the structuring of business ventures. Indeed, Austin was present at the July 1990 meeting in Florida, where the parties structured Magnavest as a working corporation. Although Austin did not return to Florida after that meeting, his activities sustained a substantial connection

with Florida. Specifically, Austin signed the written agreement regarding the formation of Magnavest, a corporation with a business location in Florida; and Austin agreed to be Vice President of Acquisitions of Magnavest. Thus, the Court finds that Austin's activities in Florida are sufficient to have established the "minimum contacts" necessary to comport with constitutional due process requirements.

*3. Minimum contacts analysis for Kelley:*

Although Kelley traveled to Florida once, his visit was not a mere foot fall in the state's soil. Kelley met with Kechijian, Austin, and Miot in Florida in July 1990 to structure Magnavest as a working corporation. This meeting established a substantial connection with Florida because the meeting involved significant negotiations related to the parties' business venture. Indeed, as a result of this meeting, Kelley accepted a position as Senior Vice President of Operations of Magnavest, a corporation which had a business location in Florida. In addition, Kelley signed the written agreement, sent by Miot from Florida, memorializing the July 1990 meeting. Considering Kelley's activities within the context of the ongoing business relationship structured through Magnavest, the Court finds that Kelley purposefully directed his activities towards Florida through his participation in Magnavest. Along with Kechijian and Austin, therefore, Kelley could reasonably anticipate being haled into a Florida court.

The defendants rely on *Cauff Lippman Co. v. Apogee Finance Group, Inc.,* 745 F.Supp. 678, 681 (S.D.Fla.1990) in an attempt to characterize the meetings in Florida as insubstantial for purposes of establishing personal jurisdiction. The defendants' contacts with Florida in *Cauff Lippman* however, were extremely attenuated. They were limited to one meeting in Florida, which was initiated by the plaintiff, prior to the drafting of an agreement; subsequent telephone calls, faxes, and mail exchanges between the parties; and payments allegedly made in Florida.

The *Cauff Lippman* court found that these business contacts with Florida constituted an isolated transaction, which was insufficient to meet the due process standard for personal jurisdiction. As previously noted, however, the contacts established in this action arose from Kechijian's initial solicitation of a Florida resident in a Florida forum. Following this initial solicitation, the parties formed an ongoing business relationship with the Florida resident. Their activities, therefore, cannot be characterized as an isolated business transaction. Thus, the Court concludes that the defendants had sufficiently significant contacts with Florida, such that the exercise of personal jurisdiction over them does not "offend traditional notions of fair play and substantial justice." *Sea–Lift,* 792 F.2d at 992.[2]

## MOTION TO TRANSFER AND FOR EVIDENTIARY HEARING

As an alternative to their motion to dismiss for lack of personal jurisdiction, the defendants seek to transfer this action to the United States District Court for North Carolina, pursuant to 28 U.S.C. § 1404(a).

■ Section 1404(a) provides, in pertinent part, that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C.A. § 1404(a) (West 1976 & Supp.1992). An action "might have been brought" in a proposed transferee court if that court has jurisdiction over the subject matter of the action, if venue is proper there, and if the defendant is amenable to process issuing out of transferee court. *Windmere Corp. v. Remington Products,* 617 F.Supp. 8, 10 (S.D.Fla.1985).

■ Pursuant to 28 U.S.C.A. § 1391(a), venue is proper in diversity actions: (1) in a judicial district where any defendant resides, if all defendants reside in the same state; (2) where a substantial part of the events or

---

**2.** The defendants also claim that they carried on their activities in Florida merely as "agents" for an out of state corporation, rather than as individuals. The Court finds this argument to be unsupported by the jurisdictional facts adduced in this case. The depositions and exhibits demonstrate that the defendants were acting as individual investors and shareholders in their business dealing with Miot and in the formation of Magnavest.

omissions giving rise to the claim arose; or (3) where the defendants are subject to personal jurisdiction, if there is no district in which the action may otherwise be brought. 28 U.S.C.A. § 1391(a) (West 1976 & Supp. 1993).

It is clear that this action could not have originally been brought in the District of North Carolina under 28 U.S.C. 1391(a). The North Carolina District is not a "judicial district where any defendant resides, if all defendants reside in the same state." Only two of the defendants reside in North Carolina; Austin resides in Kansas. Nor is the North Carolina District a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." The events underlying this action took place in Florida, not in North Carolina. Finally, the District of North Carolina is not a "judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." The Court has determined that the Southern District of Florida is a district in which this case may be brought. In addition, it is doubtful that Austin would be subject to personal jurisdiction in North Carolina, as he resides in Kansas.

■ Assuming, arguendo, that this case could have originally been brought in the District of North Carolina under 28 U.S.C. 1391(a), the Court must still weigh various factors in order to determine if a transfer to a more convenient forum is justified under 28 U.S.C. 1404(a). *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 504, 67 S.Ct. 839, 841, 91 L.Ed. 1055 (1947). The doctrine of forum non conveniens should be applied sparingly, and only when the defendant's concerns are very strong. *Soghanalian v. Soghanalian,* 693 F.Supp. 1091, 1095 (S.D.Fla.1988). The key to forum non conveniens analysis is convenience; thus, no one factor is given controlling weight in the balancing process. The factors are:

    (1) convenience of parties;

    (2) convenience of witnesses;

    (3) relative ease of access to sources of proof;

    (4) availability of process to compel presence of unwilling witnesses;

    (5) cost of obtaining presence of witnesses; and

    (6) public interest.

*Hammond North Assoc., Ltd. v. ABG Financial Services, Inc.,* 708 F.Supp. 334, 335 (S.D.Fla.1989). The plaintiff's choice of forum is not controlling but is an additional factor to be considered by the Court in determining the most convenient forum for the case. *Windmere,* 617 F.Supp. at 10.

■ Although two defendants reside in North Carolina, and the sources of documents and exhibits are located in both Florida and North Carolina, the convenience of witnesses reveals it would not be best to transfer the case. As identified by Miot, eleven witnesses for the plaintiff, including himself, are in Florida; whereas only three witnesses for the defendants, including Kechijian and Kelley, are in North Carolina. The Court concludes, therefore that the doctrine of forum non conveniens does not warrant a transfer to the District of North Carolina.

## CONCLUSION

Based on the foregoing reasons, it is hereby

ORDERED AND ADJUDGED that

(1) Defendants' motion to dismiss for lack of personal jurisdiction is DENIED.

(2) Defendants' motion to transfer and for evidentiary hearing is DENIED.

DONE AND ORDERED.