**Hugo BERNARDELE and
Gelway SA, Plaintiffs,**

v.

**Marcelo R. BONORINO, Gregory L. McPartlin, MG Investment Solutions, LLC, and Life Settlements Fund Limited, Defendant.**

Case No. 08–22781–CIV.

United States District Court,
S.D. Florida.

March 30, 2009.

Wilfredo A. Rodriguez, Esq., Martha R. Mora, Esq., Avila Rodriguez Hernandez Mena & Ferri LLP, Coral Gables, FL, for Plaintiffs.

Dominique Heller, Esq., Fowler White Boggs Banker P.A., Tampa, FL, Marnee L. Baker, Esq., Baker Donelson Bearman Caldwell & Berkowitz PC, Nashville, TN, Hector James Montalvo, Esq., Nagin Gallop & Figueredo P.A., Palmetto Bay, FL, for Defendant.

## ORDER GRANTING MOTIONS TO DISMISS: PERMITTING JURISDICTIONAL DISCOVERY; GRANTING LEAVE TO AMEND

ALAN S. GOLD, District Judge.

This CAUSE is before the Court on the Motions to Dismiss filed respectively by Defendants Life Settlements Fund Limited ("LSFL") [DE 11], Gregory L. McPartlin and MG Investment Solutions, LLC ("MG") [DE 23], and Marcelo R. Bonorino [DE 41]. Plaintiffs filed Responses to the respective Motions [DE 24, 37, 46]. McPartlin and MG further filed a Reply [DE 44]. Oral argument on these Motions was heard on February 27, 2009. Supplemental briefing requested at oral argument have since been filed. I have carefully reviewed the Motions and related pleadings, the relevant law, and considered the parties' oral arguments. For the following reasons, all three Motions are granted.

### I. Background

The relevant facts as alleged in the Complaint [DE 1], taken as true in deciding a motion to dismiss, are as follows.

Plaintiff Hugo Bernardele, a national of Argentina, and Plaintiff Gelway SA, a Uruguayan corporation, filed the instant action against Defendants Bonorino and McPartlin, residents of Virginia, MG, a Delaware

corporation with a principal place of business in Virginia, and LSFL, an Australian corporation. The action arises from the alleged wrongful termination of a Primary Soliciting Agent ("PSA") agreement Bernardele had entered into with MG on June 20, 2006. The PSA agreement provided that Plaintiff would be the exclusive representative of Life Settlements Wholesale Fund (the "Fund"), an Australian investment fund, in Argentina, Paraguay and Uruguay.[1] Defendant LSFL is the manager and trustee of the Fund.

Plaintiff alleges that in early 2006, Defendant Marcelo Bonorino approached Plaintiff, who had considerable expertise in marketing and selling life insurance products, to consider forming a partnership to market and sell Fund units to investors in certain countries in exchange for a guaranteed commission. The partnership, PWHH Financial Group LLC ("PWHH"), was formed in May 2006 for the purpose of contracting with LSFL to be the "master soliciting dealer" for the Fund. However, Plaintiff alleges that Bonorino willfully misrepresented to him of LSFL's unwillingness to contract with PWHH due to Plaintiff's status as a non-U.S. citizen, making way for Bonorino to form another partnership with Defendant Gregory McPartlin to take the place of PWHH as LSFL's master soliciting dealer. The result of the new partnership formed on June 7, 2006 by Bonorino and McPartlin was Defendant corporation MG. Bonorino and McPartlin are the two managing partners of MG. On June 20, 2006, MG entered into an agreement with LSFL in which MG became the Master Soliciting Dealer of the Fund.

Having excluded Plaintiff from ownership interest in a partnership to be LSFL's master soliciting dealer, but still desirous of Plaintiffs expertise in South American investment markets, Bonorino and McPartlin decided that MG would enter into the PSA agreement with Plaintiff. On June 20, 2006, on the same day MG became the Master Soliciting Dealer of the Fund, Bernardele and MG executed the PSA agreement containing key terms as negotiated in the May 2006 meeting in Miami with Bonorino and McPartlin. Plaintiff worked diligently to fulfill his obligations under the agreement, and in March 2007, the agreement was extended to include Plaintiffs company, Gelway SA, and added Brazil to Plaintiffs solicitation territory. Beginning in October 2007, Plaintiff made substantial efforts to market the Fund to a Spanish investment broker CM Capital Markets ("CM") operating in Brazil and to secure their investment in the Fund, leading to a Capital Markets agreement to be signed in October 2007 by Plaintiff and Defendants. Plaintiff alleges that Bonorino and McPartlin, through MG, wrongfully and maliciously terminated the PSA agreement on April 14, 2008 to deprive him of his contractual right to commissions that he would have earned from CM's investment in the Fund.

Based on these allegations, Plaintiff brings claims for breach of the PSA and Capital Markets agreements (Counts I and II), intentional interference with the PSA agreement (Count III), intentional interference with advantageous business relationship with respect to the Capital Markets agreement and the Fund (Count IV and V), fraudulent misrepresentation (Count VI), civil conspiracy to commit

1. The underlying asset of the Fund is "Life Settlements." A Life Settlement refers to the sale of an existing life insurance policy by the beneficiaries of the policy to the Fund in exchange for an immediate cash settlement; the Fund in turn becomes the policy's new owner and receives the full benefits of the life insurance policy when the policy becomes payable. Agents such as Plaintiff sell "units" of the Fund to investors.

fraud (Count VII), unjust enrichment (Count VIII), constructive trust (Count IX), and equitable accounting (Count X). Defendants move to dismiss on the basis of personal jurisdiction.

## II. Standard of Review

In determining whether to grant a motion to dismiss, the court must accept all the factual allegations in the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir.2003); *Hoffend v. Villa*, 261 F.3d 1148, 1150 (11th Cir.2001). Where a motion to dismiss is not an adjudication on the merits, a judge may make factual findings. *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir.2008). For instance, it is well-established that a judge may make factual findings necessary to motions to dismiss for lack of personal jurisdiction, lack of subject matter jurisdiction, ineffective service of process, and improper venue. *Id.* It is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop the record. *See id.*

As for pleading requirements, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "Of course, 'a formulaic recitation of the elements of a cause of action will not do.'" *Watts v. Florida Intern. University*, 495 F.3d 1289, 1295 (11th Cir.2007) (quoting *Twombly*, 127 S.Ct. at 1965). "While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because it strikes a savvy judge that actual proof of those facts is improbable, the factual allegations must be enough to raise a right to relief above the speculative level." *Watts*, 495 F.3d at 1295 (citing *Twombly*, 127 S.Ct. at 1965) (internal quotations omitted)). In order to survive a motion to dismiss, the Plaintiff must have "nudged [its] claims across the line from conceivable to plausible." *Bell Atl.*, 127 S.Ct. at 1974. The rule "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. *Id.* It is sufficient if the complaint succeeds in "identifying facts that are suggestive enough to render [the element] plausible." *Id.*

## III. Discussion

While I have subject matter jurisdiction over this action on the basis of diversity of citizenship between the parties, Defendants contend that that this action must be dismissed for lack of personal jurisdiction. Whether a federal court has personal jurisdiction over a defendant is a question of law. *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir.2000) (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir.1996)). Federal courts sitting in diversity undertake a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute, and (2) not violate the due process clause of the Fourteenth Amendment to the United States Constitution. *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1274–75 (11th Cir.2009); *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir.2007).

The reach of the Florida long-arm statute is a question of Florida law which federal courts are required to construe as

would the Florida Supreme Court. *United Tech. Corp.*, 556 F.3d at 1274–75; *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1271 (11th Cir.2002). Further, "a plaintiff seeking to subject a nonresident defendant to jurisdiction of the court through the long-arm statute must do more than allege facts that show a possibility of jurisdiction." *Lawson Cattle & Equip., Inc. v. Pasture Renovators LLC*, 139 Fed.Appx. 140, 142 (11th Cir.2005) (quoting *Jet Charter Service, Inc. v. Koeck*, 907 F.2d 1110, 1112 (11th Cir.1990)). To comport with the due process clause of the Fourteenth Amendment requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction not offend "traditional notions of fair play and substantial justice." *Sloss*, 488 F.3d at 925 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). In other words, to satisfy constitutional concerns, the non-resident defendant should reasonably expect to be haled into court in the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). I conclude that given the nature of Defendants' contacts in Florida, they are neither subject to general or specific personal jurisdiction in Florida.

Plaintiff bears the burden of establishing a prima facie case of personal jurisdiction over the defendant, which means plaintiff must present enough evidence to withstand a motion for directed verdict. *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1296 (11th Cir.2009); *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264,

1268–69 (11th Cir.2002); *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir.2000). "A directed verdict is only proper when the facts and inferences so overwhelmingly favor the verdict that no reasonable juror could reach a contrary decision." *Butler v. Greif Bros. Service Corp.*, 231 Fed.Appx. 854, 856 (11th Cir. 2007) (citing *Carruthers v. BSA Adver., Inc.*, 357 F.3d 1213, 1215 (11th Cir.2004)). Where, as here, the defendant submits affidavits to the contrary, the burden traditionally shifts back to the plaintiff to prove jurisdiction by affidavits, testimony or documents unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction. *Internet Solutions Corp.*, 557 F.3d at 1296; *Meier*, 288 F.3d at 1269; *see Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir.1999). Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir.1990) (citations omitted); *Consol. Dev. Corp.*, 216 F.3d at 1291. As noted above, I may also make factual findings necessary to motions to dismiss for lack of personal jurisdiction. *Bryant*, 530 F.3d at 1376.

### A. Jurisdictional Facts

As an initial matter, whether there is personal jurisdiction over these Defendants requires a review of Defendants' contacts with the state of Florida as set forth in the record.[2]

---

**2.** Extensive affidavits and exhibits relating to Defendants' presence in Florida were submitted. McPartlin has filed one affidavit [DE 23–2] and Bonorino has filed two substantially similar affidavits [DE 23–3, 41–2]. Defendant LSFL has filed the declarations of Robert White, the Chief Operating Officer of CMG Surety [DE 11–2], a Florida corporation affiliated with LSFL, and Stephen Knott, a Di-

rector of LSFL who resides in Australia [DE 11–3]. In response, Plaintiff has filed a declaration [DE 24–2] attaching a number of LSFL documents and emails, a supplemental declaration [DE 37–4], a second affidavit of McPartlin [DE 37–2], and the affidavit of Mario Hernandez Fumero [DE 37–6], a businessman who was present at a meeting between Bernardele and Bonorino.

### 1. Bonorino, McPartlin, and MG

Bernardele attests that his involvement with the Fund began with a February 2006 meeting in Miami, Florida with Bonorino to discuss the formation, ownership structure and commission scheme of a partnership to market and sell units of the Fund to investors in Argentina, Paraguay and Uruguay. Compl. ¶¶ 22–23; Bern. Decl. ¶ 15; Bern. Suppl. Decl. ¶ 3; Hernandez Decl. ¶¶ 3–4.[3] Pursuant to discussions conducted during that meeting, on or about May 11, 2006, Bonorino and Bernardele formed PWHH Financial Group, LLC ("PWHH"), a company organized in Delaware for the purpose of becoming the Fund's master soliciting dealer, with Bonorino and Bernardele each owning 50% of the company. Compl. ¶ 26; Bern. Supp. Decl. ¶ 4. In late May of 2006, Bonorino and McPartlin met Bernardele in Miami to discuss and finalize their negotiations on the key terms regarding their representation of the Fund and commissions to be paid. Bern. Supp. Decl. ¶ 5. Bernardele alleges that these key terms were ultimately memorialized in the PSA agreement executed on June 20, 2006. Id. at ¶ 8. In early 2007, after the substitution of MG for PWHH as LSFL's master soliciting dealer and the execution of the PSA agreement between Bernardele and MG, as discussed above, Bernardele alleges he met Bonorino and McPartlin again in Miami to discuss their business partnership, commissions, and future business opportunities. Compl. ¶ 37. In sum, Bernardele alleges he met Bonorino in Miami three times—February 2006, late May 2006 and early 2007—and that McPartlin was at the latter two meetings.

In rebuttal, Bonorino and McPartlin, who are citizens of Virginia, submit declarations that demonstrate their limited contacts in Florida and the absence of any contacts of MG with Florida. With respect to their individual contacts, Bonorino and McPartlin both deny that they were present at any meetings with Bernardele in Miami with the exception of a May 2006 meeting at which Bonorino and McPartlin were conducting business for their then-current employer Vespers Financial Group, LLC with Bernardele. Bonorino Decl. 1 ¶¶ 9, 10; McPartlin Decl. 1 ¶¶ 9, 10. At the meeting, the parties discussed a venture for Argentinian investors involving a separate company called Secondary Life Capital, whose representative was also in Miami for the meeting. Id. The venture was to become PWHH, but because the venture did not materialize, PWHH never got off the ground. Bonorino Decl. 1 ¶¶ 9. The purpose of the meeting was to discuss Vespers venture and not the Fund or MG, Bonorino Decl. 1 ¶ 11; McPartlin Decl. 1 ¶ 11, and no substantial negotiations concerning MG were conducted with Bernardele in Miami.[4] Bonorino Decl. 2, ¶¶ 12–13.

With respect to MG's contacts, Plaintiffs do not dispute that MG is incorporated in Delaware and has offices only in Virginia and Brazil. Bonorino Decl. 1 ¶¶ 2, 4; McPartlin Decl. 1 ¶¶ 2, 4. Bonorino and McPartlin further attest that MG does not maintain any employees, agents, offices, post office box, telephones, bank account, or property of any kind in Florida, does not advertise the Fund in Florida, and has not entered into any contracts in Florida.

---

3. Hernandez–Fumero attests that in 2006, without specifying the date, he met Bernardele and Bonorino to discuss the Fund and that they solicited his assistance in identifying agents in the Dominican Republic and Venezuela and discussed fees and commission structure with him.

4. McPartlin states that the Fund was not discussed at this meeting and that the Fund did not even yet exist at that time. McPartlin Decl. 2 ¶ 13. This statement is at odds with the declaration of Bonorino.

Bonorino Decl. 1 ¶ 8; McPartlin Decl. 1 ¶ 8. Bonorino and McPartlin further represented at oral argument that MG has no clients in Florida. MG's agreement with LSFL in which MG became the Fund's master soliciting dealer, was signed in Buenos Aires, Argentina. Bonorino Decl. 1 ¶ 13; McPartlin Decl. 1 ¶ 13. Similarly, the PSA agreement with Bernardele was executed in Buenos Aires, Argentina. Bonorino Decl. 1 ¶ 13; McPartlin Decl. 1 ¶ 13. Bonorino and McPartlin further attest that MG does not act as a master soliciting dealer for the Fund in Florida or in the United States, and has not transacted any business in Florida concerning the Fund. Bonorino Decl. 1 ¶ 7; McPartlin Decl. 11 ¶ 7. Indeed, MG is not allowed to do business in the United States with respect to the Fund. McPartlin Decl. 2 ¶ 5.

### 2. LSFL

Plaintiffs allege that LSFL conducts business in Florida through its agent and part-owner, CMG Surety LLC ("CMG"), which has an office in Florida. Bern. Decl. ¶¶ 5, 6. Bernardele offers as exhibits LSFL newsletters that show the CMG is considered a "USA Licensed Provider" and a "US Partner." Bern. Decl. Ex. 1, Ex. 2 at 4. Other newsletters show that the Fund portfolio includes investments procured in the United States and that LSFL markets the Fund in Florida. *Id.* at ¶¶ 9–11, Ex. 4 at 5 (Director Grant Vickers and one of our international marketing agents . . . are on an extensive business development trip that encompasses . . . Miami"). Plaintiffs offer evidence that two directors of LSFL, Laken Mitchell and Rob White, are employed by CMG and reside in Florida. *Id.* at ¶ 7, Ex. 2 at 2. Finally, on several occasions, Bernardele communicated with Mitchell, White, and/or another LSFL director, Andrew Walter about his work securing investors in the Fund.[5] *Id.*

at ¶¶ 12, 16, 18, 20, 21, 32; Bern. Decl. Ex. 6–11. Of note, Exhibit 7 is of an email chain dated June 15, 2006 in which Bonorino, Bernardele and senior executives of LSFL, including Laken Mitchell, discuss the upcoming launch of the Fund in Argentina and talking points in response to common questions from investors. Another email chain in the exhibit shows Bonorino making travel arrangements for a June 21–24, 2006 visit to Argentina by Mitchell and Walters, among others. Exhibit 8 is a lengthy email from Mitchell to Bernardele, copying Bonorino, discussing the Fund's net asset value formula and explaining the Fund's superiority over its competitors. Exhibit 9 is an email from McPartlin to Bernardele, copying Mitchell, regarding the procedures of bringing on a new investor. Finally, Exhibit 11 is an email from Mitchell congratulating Bernardele and Bonorino for having brought CM to the table as potential investors.

In rebuttal, the Chief Operating Officer of CMG, Robert White, declares that CMG conducts no business with respect to LSFL or the Fund in Florida and that CMG is neither an agent or representative of LSFL or the Fund. White Decl. ¶¶ 4, 5. LSFL Director Stephen Knott further declares that LSFL does not personally or though an agent carry on any business in the United States and has no offices, employees or agents in Florida. Knott Decl. ¶ 5.

### B. Jurisdictional Discovery

Despite conflicting accounts of certain jurisdictional facts, Plaintiffs argue that they have carried their burden in demonstrating the existence of personal jurisdiction over all defendants. In the alternative, they seek jurisdictional discovery to establish facts necessary for such a showing.

---

5. According to Bernardele, Walter is based in the United States and CEO of Life Settlement Providers, LLC, another related entity to LSFL. Bern. Decl. ¶ 8.

A qualified right to conduct jurisdictional discovery is recognized in the Eleventh Circuit. *Eaton v. Dorchester Development, Inc.*, 692 F.2d 727, 729 (11th Cir. 1982) ("jurisdictional discovery is not entirely discretionary ... a court does not have discretion to grant or deny a request for jurisdictional discovery [when jurisdictional facts are in dispute]. Rather, it is appropriate to speak in terms of a qualified "right" to jurisdictional discovery when a court's jurisdiction is genuinely in dispute"); see *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 13, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) ("Where issues arise as to jurisdiction or venue, discovery is available to ascertain facts bearing on such issues."). Specifically, "[i]f the jurisdictional question is genuinely in dispute and the court cannot resolve the issue in the early stages of the litigation ..., then discovery will certainly be useful and may be *essential to the revelation of facts necessary to decide the issue.*" *Eaton*, 692 F.2d at 730 n. 7 (emphasis added); *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir.1997) (a motion to dismiss for lack of personal jurisdiction may require limited discovery so that a *meaningful ruling* can be made); *Majd–Pour v. Georgiana Community Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir.1984) ("[a]lthough the plaintiff bears the burden of proving the court's jurisdiction, the plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction"). As the above precedent reflects, jurisdictional discovery is favored where there is a genuine dispute concerning jurisdictional facts necessary to decide the question of personal jurisdiction; it is not an unconditional right that permits a plaintiff to seek facts that would ultimately not support a showing a personal jurisdiction. Here, the declarations offered by the parties reflect certain contradictions. However, these contradictions must be sufficiently material to warrant jurisdictional discovery or an evidentiary hearing. *See Laux v. Carnival Corp.*, 470 F.Supp.2d 1379, 1383 (S.D.Fla.2007) (when two affidavits cannot be reconciled on key jurisdictional issue, a limited evidentiary hearing is warranted). For the reasons set forth below, jurisdictional discovery is warranted only as to LSFL.

## C. Specific Personal Jurisdiction

Having reviewed the purported contacts of each of the Defendants with the state of Florida, I next analyze whether such contacts fall within the reach of Florida's long-arm statute. Plaintiffs allege that this Court has specific jurisdiction over Defendants based on their carrying on a business venture in Florida and their tortious actions in Florida, and that their business activities in Florida warrant the exercise of general jurisdiction.

### 1. Long–Arm Statute

Florida's long-arm statute provides for specific jurisdiction over a non-resident defendant. Section 48.193(1) provides that:

> Any person, whether or not a citizen or resident of this state, who ... does any of the acts enumerated in this subsection thereby submits himself or herself ... to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> (a) Operating, conducting, engaging in, or carrying on a business or business venture in [Florida] or having an office or agency in [Florida].
>
> (b) Committing a tortious act in Florida.

#### a. Carrying on business

In order to establish that a defendant was carrying on a business or business venture in the state, either itself or through an agent, "[t]he activities of the [defendant] sought to be served ... must be considered collectively and show a general course of business activity in the State

for pecuniary benefit." *Sculptchair*, 94 F.3d at 627 (quoting *Dinsmore v. Martin Blumenthal Associates, Inc.,* 314 So.2d 561, 564 (Fla.1975)); *Future Tech. Today, Inc. v. OSF Healthcare Sys.,* 106 F.Supp.2d 1278, 1281 (S.D.Fla.1999). In determining whether Defendants conduct business in Florida, relevant factors "include the presence and operation of an office in Florida, the possession and maintenance of a license to do business in Florida, the number of Florida clients served, and the percentage of overall revenue gleaned from Florida clients." *Horizon Aggressive Growth, LP. v. Rothstein–Kass, PA,* 421 F.3d 1162, 1167 (11th Cir.2005) (internal citations omitted). Plaintiffs contend that all Defendants were carrying on a business within the meaning of the long-arm statute. I first discuss whether Fla. Stat. § 48.193(1)(a) reaches Bonorino, McPartlin and MG, and then discuss whether it reaches LSFL.

The jurisdictional facts with respect to MG, Bonorino, and McPartlin do not warrant a finding of jurisdiction under Fla. Stat. § 48.193(1)(a).[6] Based on the jurisdictional facts outlined above, it is clear that there is no jurisdiction under the *Horizon* factors; MG has no office and serves no clients in Florida. While the *Horizon* factors are not dispositive, *see Horizon,* 421 F.3d at 1167, even accepting Plaintiffs' account of the meetings with Bonorino and McPartlin, the two meetings in Florida for the purpose of negotiating an agreement that was ultimately executed outside Florida and email communication into Florida cannot be found to constitute a general course of business activity in Florida for pecuniary benefit. *Sculptchair,* 94 F.3d at

628 (insufficient business activity to support personal jurisdiction over a defendant whose only activities in Florida included a series of telephone conversations from Canada to Florida and a meeting to facilitate a contract to be performed in Canada); *Bluewater Trading LLC v. Fountaine Pajot, S.A.,* 2008 WL 2705432, *5 (S.D.Fla. Jul. 9, 2008) (no personal jurisdiction over Defendant who exhibits boats in Florida once a year at the Miami International Boat Show, meets with dealer in Florida, and communicates with the dealer from outside Florida); *Musiker v. Projectavision, Inc.,* 960 F.Supp. 292 (S.D.Fla.1997) (telephone calls made by chief executive officer of nonresident corporation to resident stock purchaser, corporate materials faxed and mailed to purchaser, and CEO's presentation to stockbrokers at meeting in Florida did not reflect general course of business in Florida for pecuniary benefit); *Intercontinental Corp. v. Orlando Regional Med. Ctr.,* 586 So.2d 1191, 1195 (Fla. Dist.Ct.App.1991) (no personal jurisdiction where defendants' only contacts consisted of letters and telephone calls from Kentucky or Indiana into Florida and a single meeting attended by defendants' counsel in Florida); *see Mold–Ex, Inc. v. Mich. Technical Representatives, Inc.,* 2005 WL 2416824 (N.D.Fla. Sep. 30, 2005) (making telephonic and electronic communications into Florida did not constitute "conducting business" in Florida) (relying on *Horizon Aggressive Growth,* 421 F.3d at 1167). Plaintiffs argument that jurisdiction is warranted where negotiations were so substantial to the point that execution was a mere formality lacks merit.[7] The best case I have found to support Plaintiffs position is *Kilma v. Carnival Corp.,* 2008

---

**6.** As stated by counsel at oral argument by counsel for McPartlin and MG, who are jointly represented, the legal analysis as to McPartlin and MG should be the same as Bonorino, even though he is separately represented. Therefore, for ease of organization, I

discuss these three defendants collectively except where certain differences require elaboration.

**7.** Plaintiffs rely heavily on *Williams Electric Co. v. Honeywell,* which held that a foreign

WL 4559231, *2 (S.D.Fla., Oct. 10, 2008). In *Kilma*, the court held that travel to Florida for negotiations of contract in Florida by defendant could plausibly satisfy the long-arm statute, but noted that to constitute conducting a business, plaintiffs had to demonstrate that non-the resident defendant had sufficient contractual arrangements in place with resident defendant to generate revenue from defendant's customers. Other courts have similarly held that more than negotiations are required. *See e.g., Baker Electronics, Inc. v. Pentar Systems, Inc.*, 219 F.Supp.2d 1260, 1263 (M.D.Fla.2002) (traveling to Florida to meet with Plaintiff, a Florida corporation, about possibility of joint venture, numerous email and other communication with Florida corporation, execution of MOU via email and telephone, delivery of three servers to plaintiff in Florida sufficient to constitute doing business). Moreover, significant distinguishing factor in

this case for the purpose of satisfying the long-arm statute, is that the PSA agreement was not executed or performed in Florida, reflecting the absence of a general course of business activity for pecuniary benefit. *See Mold–Ex, Inc., supra* (no personal jurisdiction where agreements at issue executed in Michigan). Under the relevant law, I conclude Plaintiffs have not satisfied their burden to demonstrate specific personal jurisdiction over MG, Bonorino and McPartlin under § 48.1939(1)(a) of the Florida long-arm statute. Further, jurisdictional discovery as to Bonorino, McPartlin, and MG is unwarranted because the additional jurisdictional facts sought by Plaintiffs would not affect my analysis.

 The jurisdictional facts with respect to LSFL, however, indicate the possibility that its contacts with the state of Florida would satisfy Fla. Stat. § 48.193(1)(a).[8] Plaintiffs first argue there

---

defendant purposefully directs its activities at residents of the forum state "when [a] meeting in the forum state . . . involves 'significant negotiations of important terms'." 854 F.2d 389, 392–93 (11th Cir.1988) (quoting *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989 (11th Cir.1986)). *Williams Electric* and *Sea Lift* are ultimately unhelpful to Plaintiff's position, though not for the reasons Defendants have stated. In both cases, the Court found that significant negotiations of important contractual terms are an indication of purposeful availment of the benefits and protections of Florida's laws as part of the due process analysis of personal jurisdiction over non-resident defendants. *Id.* at 393. Further, the Court never reached the question of whether substantial negotiations satisfy the § 48.193(1)(a) of the long-arm statute concerning the carrying on of a business, but rather concluded that the negotiations and subsequent execution of contract in Florida constituted tortious behavior under the facts of the case. It is worth noting that the Court held that "[satisfaction of] the Florida long-arm statute [ ] requires more activities or contacts to confer personal jurisdiction than those demanded by the Constitution." *Id.* at

394. In short, while substantial negotiations may satisfy the minimum contacts requirement of the due process analysis, the Court did not find that substantial negotiations satisfied § 48.193(1)(a). Plaintiffs have otherwise not cited to any other persuasive authority.

8. LSFL also moves to dismiss for ineffective service of process pursuant to Fed.R.Civ.P. [DE 11]. Its position is without merit. Pursuant to Fed.R.Civ.P. 4(h), a domestic or foreign corporation can be served with process in the manner prescribed by Rule 4(e)(1) for serving an individual. Rule 4(e) is applicable to service effected within the United States, regardless of where defendant is located. *Silvious v. Pharaon*, 54 F.3d 697, 701–02 (11th Cir.1995). Rule 4(e) further provides for service of process in accordance with state law in the state where the district court is located. Section 48.081 of the Florida Statutes specifically provides that service on a domestic or foreign corporation can be made on a director of the corporation under these circumstances. Fla. Stat. 48.081(1)(c). Bernardele served LSFL by delivering the summons and complaint to Laken Mitchell, a resident of Florida and who without dispute is a director

is specific jurisdiction based on CMG's capacity as an agent of LSFL. In order to establish an agency relationship in Florida, a party must show: (1) acknowledgment by the principal that the agent will act for it; (2) the agent's acceptance of the undertaking; and (3) control by the principal over the actions of the agent. *See Keys Jeep Eagle, Inc. v. Chrysler Corp.*, 897 F.Supp. 1437, 1442–43 (S.D.Fla.1995) (citing *Goldschmidt v. Holman*, 571 So.2d 422, 424 n. 5 (Fla.1990)). Plaintiffs have failed to allege or provide the necessary evidence to show that any of these elements are met. The mere fact that CMG is considered a "USA Licensed Provider" and a "US Partner" of LSFL is inadequate.

However, Plaintiffs find traction with their allegations pertaining to the activities of LSFL and its directors residing in Florida. Bernardele points to evidence in the record that the Fund portfolio includes investments procured in the United States and that LSFL has targeted Florida (and Miami, in particular) as a place to market the Fund. While such solicitation of business in Florida may permit the exercise of personal jurisdiction, there is no evidence concerning the extent of such activity, and the declarations offered by LSFL assert that LSFL conducts no business anywhere in the United States. Finally, although LSFL has no employees in Florida, Plaintiffs have shown that at least two directors of LSFL, Mitchell and White, are in Florida and, as evidenced by the email correspondence offered by Bernardele, conduct at least some business on behalf of the LSFL. In response, counsel for LSFL argued at oral argument that the directors were acting only in their capacity as directors and officers of CMG. The conflicts in jurisdictional facts as to the activities of LSFL and certain directors residing in Florida warrant limited jurisdictional discovery to ascertain the nature and degree of LSFL [DE 24–7]. Accordingly, service of

of such activity. *See Sculptchair*, 94 F.3d at 627–28 (defendant who maintained no office but solicited sales in Florida by circulating price lists and giving product presentations in several meetings in Florida was engaged in general course of business activity in Florida for pecuniary benefit); *Benedict v. General Motors Corp.*, 142 F.Supp.2d 1330, 1336 (N.D.Fla.2001) (office with one single employee who is out of state 75% of the time sufficient to confer jurisdiction). Accordingly, limited jurisdictional discovery as to LSFL is appropriate.

#### b. Committing a tort

■ Specific jurisdiction may be found under Section 48.193(1)(b) when a defendant "commit[s] a tortious act in Florida." Fraudulent misrepresentation and intentional interference, part of Plaintiffs' claims in this action, are torts encompassed by this provision. *Musiker v. Projectavision, Inc.*, 960 F.Supp. 292, 296 (S.D.Fla.1997); *Kelly v. Kelly*, 911 F.Supp. 518, 521 (M.D.Fla.1995). The Eleventh Circuit has recognized that the Florida long-arm statute permits jurisdiction over a non-resident defendant who commits a tort outside of the state that causes injury inside the state. *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir.2008) (relying on *Posner*, 178 F.3d at 1216). Personal jurisdiction may also attach under the 'tortious activity' provision of the Florida long-arm statute if the plaintiff can demonstrate that the non-resident defendant "committed a substantial aspect of the alleged tort in Florida" by establishing that the activities in Florida were "essential to the success of the tort." *Cable/Home Commc'n Corp. v. Network Prod.*, 902 F.2d 829, 857 (11th Cir.1990) (quoting *Williams Electric Co. v. Honeywell, Inc.*, 854 F.2d 389, 394 (11th Cir.1988)). Physical presence of the defendant in Florida is not process on LSFL is proper.

required in certain instances. *Horizon Aggressive Growth, L.P.*, 421 F.3d at 1168 (citing *Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla.2002)). For instance, a foreign defendant can commit a tortious act in Florida "through telephonic, electronic, or written communications into Florida" so long as the cause of action arises from these communications. *Wendt*, 822 So.2d at 1260. However, the place of injury must be within Florida. *Licciardello*, supra; *Hollingsworth v. Iwerks Entm't, Inc.*, 947 F.Supp. 473, 477 (M.D.Fla.1996); *L.O.T.I. Group Prod. v. Lund*, 907 F.Supp. 1528, 1532 (S.D.Fla.1995).

The tort as alleged by Plaintiffs is the intentional misrepresentation to Bernardele by Bonorino shortly after the May 2006 meeting in which Bonorino allegedly stated that PWHH, the partnership formed between Bonorino and Bernardele, could not become the Master Soliciting Dealer for the Fund because Bernardele was a not a citizen of the United States.[9] According to Bernardele, this misrepresentation led to the formation of MG and the resulting interference of his dealings with the PSA agreement, CM, and the Fund. Here, the jurisdictional facts establish that the misrepresentation did not take place in Florida or take the form of communications into Florida. Further, Plaintiffs did not suffer any injury arising from this misrepresentation in Florida; the misrepresentation and alleged interference with Plaintiffs' business relations have injured Plaintiffs in Argentina and Uruguay, respectively, where they reside, not in Florida.[10] Accordingly, specific jurisdiction over Bonorino, McPartlin, and MG should not be exercised under Fla. Stat. § 48.193(1)(b).

2. Due Process Analysis

■ As discussed above, the second part of the jurisdictional analysis requires my review of whether exercising jurisdiction over Defendants comports with the Due Process Clause of the Fourteenth Amendment. Subjecting Defendants to jurisdiction in Florida comports with due process so long as "minimum contacts" exist between Defendants and Florida and exercising jurisdiction does not offend "traditional notions of fair play and substantial justice." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1220 (11th Cir.1999) (quoting *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 258–59 (11th Cir.1996) (internal quotation omitted)). Because I conclude the Florida long-arm statute does not reach Bonorino, McPartlin and MG, and does not reach LSFL without additional facts as may be revealed by jurisdictional discovery, it is unnecessary for present purposes to engage in a detailed analysis.

9. Plaintiffs do not argue that jurisdiction over LSFL is proper under Fla. Stat. § 48.193(1)(b).

10. Plaintiffs misplace their reliance on *Williams Electric*, supra, to support a showing of jurisdiction under § 48.193(1)(b). In *Williams Electric*, it was held that activities in Florida essential to the success of the tort would satisfy the long-arm statute. 854 F.2d at 394. In this case, defendant forced plaintiff to accept a subcontract with anti-competitive provisions that favored defendant, and the Court found that the negotiation and execution of the subcontract were "essential to the tort," as plaintiff only suffered damages when the subcontracts were actually consummated. These factual circumstances are not analogous to the facts before me, where the misrepresentation that LSFL will not contract with Bernardele would be tortious regardless of whether Bonorino and Bernardele had agreed by the May 2006 meeting to form a partnership to be LSFL's Master Soliciting Dealer. Moreover, the plaintiff, a Florida corporation, suffered economic damages from defendant's anti-competitive behavior in Florida. Therefore, to the extent Plaintiffs imply otherwise, *Williams Electric* does not eliminate the requirement that the injury must be suffered within Florida.

The Eleventh Circuit employs a three-prong test to determine whether a defendant has established the requisite minimum contacts with the forum state to comply with the Fourteenth Amendment's due process requirement: (1) the contacts must be related to the plaintiffs cause of action; (2) they must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the state; and (3) the defendant's contacts with the state must be such that the defendant should reasonably anticipate being haled into court there. *Posner,* 178 F.3d at 1220. If I were to conclude that Defendants' contacts satisfied the long-arm statute, Plaintiffs' counts would satisfy the minimum contacts analysis with the exception of Count II, as these causes of action relate to Defendants' business negotiations (which ultimately led to the PSA agreement) and subsequent intentional misrepresentation.[11] Further, as discussed above, there is purposeful availment of the privilege of conducting activities in Florida where substantial negotiations of key contract terms were conducted in the state. *Williams Electric Co. v. Honeywell,* 854 F.2d 389, 392–93 (11th Cir.1988).

However, even where a defendant has established constitutionally significant contacts within the forum state sufficient for specific jurisdiction, jurisdiction must further be evaluated in light of several other factors to determine "whether the extension of jurisdiction comports with traditional notions of fair play and substantial justice under the principles established in *International Shoe* and its progeny." *Meier,* 288 F.3d at 1276 (citing *Posner,* 178

F.3d at 1221). In determining whether jurisdiction would comport with traditional notions of fair play and substantial justice, the court looks at factors such as: the burden on the defendant of litigating in the forum, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *Meier,* 288 F.3d at 1276 (citing *Future Tech.Today, Inc. v. OSF Healthcare Sys.,* 218 F.3d 1247, 1251 (11th Cir.2000)). Here, Florida's interest in adjudicating the dispute is remote because none of the parties reside in Florida or are Florida corporations. *Keston v. FirstCollect, Inc.,* 523 F.Supp.2d 1348 1355 n. 5 (S.D.Fla.2007) (interest in adjudicating the dispute does not exist where plaintiff is a nonresident); *see Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ("[a] State generally has a 'manifest interest' in providing *its residents* with a convenient forum for redressing injuries inflicted by out-of state actors.") (emphasis added).[12] In sum, the absence of any Florida residents in this case further counsels against exercising personal jurisdiction.

### D. General Personal Jurisdiction

■ General jurisdiction over a foreign defendant is further conferred on Florida courts pursuant to section 48.193(2) of Florida's long-arm statute, which provides:

A defendant who is engaged in substantial and not isolated activity within this

---

**11.** Count II is for breach of the CM agreement. The Complaint is devoid of any allegations that this agreement has any connection with Defendants' contacts in Florida.

**12.** Plaintiffs argue at oral argument that Florida is the only viable forum in which all

defendants can arguably be sued. While proceeding in Florida may afford Plaintiffs "convenient relief," however, this factor alone cannot trump the requirements of Florida's long-arm statute, which are unmet in this case.

state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. 48.193(2).

By the terms of the long-arm statute, general jurisdiction under Fla. Stat. § 48.193(2) does not require a connection between a defendant's activities and the cause of action. *See Helicopteros Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed.2d 404 (1984). Florida courts have held the term "substantial and not isolated activity" used in § 48.193(2) means "continuous and systematic general business contact" with Florida, a term used by the Supreme Court in *Helicopteros* to determine whether general jurisdiction was permissible under the Due Process Clause. *Snow v. DirecTV, Inc.,* 450 F.3d 1314, 1318–19 (11th Cir.2006). Further, such contacts must be "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities." [13] *Int'l Shoe Co.,* 326 U.S. at 318, 66 S.Ct. 154. Indeed, some courts have stated that a defendant's contacts collectively over the relevant "period of years prior to the filing of a complaint" should be considered. *KVAR Energy Sav., Inc. v. Tri-State Energy Solutions, LLP,* 2009 WL 103645, *4 (M.D.Fla.2009, Jan. 15, 2009) (citing *Autonation, Inc. v. Whitlock,* 276 F.Supp.2d 1258, 1263 (S.D.Fla.2003); *Woods v. Nova Cos. Belize Ltd.,* 739 So.2d 617, 621 (Fla.Dist.Ct.App.1999)).

The jurisdictional facts, as discussed in detail above, do not support general personal jurisdiction over MG, Bonorino, or McPartlin. *Rexam Airspray, Inc. v. Arminak,* 471 F.Supp.2d 1292, 1299 (S.D.Fla. 2007) (infrequent business travel to Florida for sales meetings, employment of Florida agent, and one-time advertisement not sufficient to confer general jurisdiction); *Musiker,* 960 F.Supp. at 297 (telephone calls made by chief executive officer of nonresident corporation to resident stock purchaser, corporate materials faxed and mailed to purchaser, and CEO's presentation to stockbrokers at meeting in Florida was not "substantial and not isolated" conduct). Cases finding general personal jurisdiction involve more contacts with Florida. *See e.g., Future Tech Intl., Inc. v. Tae II Media, Ltd.,* 944 F.Supp. 1538 (S.D.Fla. 1996) (defendant had existing business relationship with resident plaintiff corporation to manufacture goods for it, extensive correspondence and communication with plaintiff, attendance at three meetings in Miami, and solicitation of business from Florida customers). Further, the absence of specific jurisdiction, as discussed above, is indicative of the lack of general jurisdiction. *Meier,* 288 F.3d at 1274 ("The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction . . . .") (internal citations omitted); *Christus St. Joseph's Health Sys. v. Witt Biomedical Corp.,* 805 So.2d 1050, 1052 (Fla.Dist.Ct. App.2002). Accordingly, Bonorino, McPartlin and MG's contacts in Florida are not sufficiently continuous and system-

---

13. Florida courts have recognized the term "substantial and not isolated activity," in the long arm statute to be the functional equivalent of the continuous and systematic contact requirement for general jurisdiction under the Due Process Clause of the Fourteenth Amendment. *Meier,* 288 F.3d at 1269, n. 6 (citing *Helicopteros,* 466 U.S. at 413–16, 104 S.Ct. 1868 (1984)); *see also Woods v. Nova Companies Belize, Ltd.,* 739 So.2d 617, 620 (Fla.Dist. Ct.App.1999). Therefore, the analyses of jurisdiction under § 48.193(2) and the Due Process Clause merge. *Autonation v. Whitlock,* 276 F.Supp.2d 1258,1262 (S.D.Fla.2003).

atic to justify any and all causes of action against them in Florida.

■ As to LSFL, given the conflicting jurisdictional facts as to the activities of Mitchell and other directors in Florida, Plaintiffs have similarly not satisfied their burden that LSFL's solicitation of business in Florida and the LSFL directors' activities on behalf of LSFL were continuous and systematic. However, limited jurisdictional discovery is likewise appropriate to determine the extent of such activities in Florida and whether such activity is sufficiently continuous and systematic to warrant the exercise of general jurisdiction.

### E. Failure to State a Claim

Having concluded limited jurisdictional discovery may establish the existence of personal jurisdiction as to LSFL, I proceed to analyze whether dismissal of Plaintiffs' claims against LSFL is nevertheless warranted for failure to state a claim. Plaintiffs' action is directed to LSFL with respective to two counts: constructive trust and equitable accounting. I discuss each in turn.

#### 1. Constructive Trust

■ A constructive trust is "a remedial device with dual objectives: to restore property to the rightful owner and to prevent unjust enrichment" and is imposed by operation law as an equitable remedy in a situation where there is a wrongful taking of the property of another. *Provence v. Palm Beach Taverns, Inc.*, 676 So.2d 1022,

1025 (Fla.Dist.Ct.App.1996); *Finkelstein v. Southeast Bank, N.A.*, 490 So.2d 976, 984 (Fla.Dist.Ct.App.1986). The necessary elements for imposition of a constructive trust are: (1) a promise, express or implied; (2) a transfer of the property and reliance thereon; (3) a confidential relationship;[14] and (4) unjust enrichment. *Abele v. Sawyer*, 750 So.2d 70, 74 (Fla. Dist.Ct.App.1999); *see Provence v. Palm Beach Taverns, Inc.*, 676 So.2d 1022, 1024 (Fla.Dist.Ct.App.1996). As to the second element, Bernardele sufficiently alleges that he has been deprived of property owed to him as a result of CM's investment into the Fund. Compl. ¶¶ 1, 63. However, Plaintiffs have failed to sufficiently allege the first, third or fourth elements of this claim.

Throughout the Complaint, it is clear that the promise of commissions resulting from any investments by CM into the Fund was made by Bonorino and McPartlin, pursuant to the PSA agreement Bernardele had entered into with MG, the Master Soliciting Dealer for the Fund, and the efforts he made in concert with Bonorino. Compl. ¶¶ 41, 42, 58, 61. Further, the breach of that promise, and consequent unjust enrichment, was by Bonorino and McPartlin. *Id.* at ¶ 55. Indeed, Plaintiffs make no allegations that LSFL made any promise, express or implied, or has been unjustly enriched, except in the count for constructive trust where it is alleged that "Defendants," referring to all Defendants, "made an express and/or implied promise

14. A confidential relationship may not be a "necessary prerequisite to the imposition of a constructive trust." *Adelphia Cable Partners, L.P. v. E & A Beepers Corp.*, 188 F.R.D. 662, 667 (S.D.Fla.1999) (citing *In re Estate of Tolin*, 622 So.2d 988, 990 (Fla.1993) ("A constructive trust is properly imposed when, as a result of a mistake in a transaction, one party is unjustly enriched at the expense of another. Although this equitable remedy is usually limited to circumstances in which fraud or a

breach of confidence has occurred, it is proper *in cases in which one party has benefitted by the mistake of another at the expense of a third party.*") (emphasis added)). Although the *Adelphia* court implies otherwise, I read *Estate of Tolin* only to mean that a confidential relationship would not be a necessary element in a case where a defendant has benefitted by the mistake of another at the expense of plaintiff. This is not the case here.

to pay Bernardele the agreed upon commissions . . . . [and] will be unjustly enriched." *Id.* at 118, 122. In light of the factual background of the Complaint, these allegations are conclusory and unsupported by facts necessary to raise a reasonable expectation that discovery will reveal evidence of these elements. *Bell Atl.,* 127 S.Ct. at 1974. Further, although Plaintiffs allege that Mitchell and other purported directors of LSFL were aware of and encouraging of Bernardele's work in South America on behalf of the Fund, Compl. at ¶ 52; *see generally,* Bern. Decl. Ex. 7, 8, 9, 11, these facts are insufficient to demonstrate a confidential relationship between the parties where there is no factual support beyond conclusory allegations showing that LSFL abused or betrayed Bernardele's trust. *See Gracey v. Eaker,* 837 So.2d 348, 352 (Fla.2002) (a fiduciary relationship requires a relation of trust and confidence between the parties, where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused) (internal citations omitted). Accordingly, the claim for constructive trust as to LSFL is dismissed.

### 2. Equitable Accounting

A complaint in equity for an accounting must show that the plaintiff is entitled to the relief sought at the time the suit is instituted. Under Florida law, a party seeking an equitable accounting must show the existence of a fiduciary relationship or a complex transaction and must demonstrate the inadequacy of the legal remedy. *Kee v. National Reserve Life Ins. Co.,* 918 F.2d 1538, 1540 (11th Cir.1990). The plaintiff must also show that he or she has a right of some kind in the funds involved in the demanded accounting, as, for example, a share in the profits of a partnership. *Wachovia Bank, N.A. v. Tien,* 534 F.Supp.2d 1267, 1288 (S.D.Fla.2007). However, a complaint fails to state a cause of action where no fraud is effectively alleged and where the payments in question are as much within the plaintiffs knowledge as they are within the defendant's knowledge. *Id.* (internal citations omitted). Here, although Bernardele has demonstrated he has an interest in the commissions allegedly retained by LSFL, an as discussed above, Plaintiffs have not demonstrated a fiduciary relationship with LSFL; Plaintiffs' connection with LSFL is through its contract with the Fund's Master Soliciting Dealer, MG. Moreover, nowhere in the Complaint are there any allegations that the commissions owed to Bernardele arise out of a complex transaction; indeed, the commission structure as set forth in the Complaint is straightforward. Finally, as to whether there is an adequate remedy at law, Plaintiffs allege without elaboration that remedies at law are "less adequate and expeditious than equity will provide with a full and complete accounting." Compl. ¶ 129. Plaintiffs have failed to show why the legal remedy, in the form of damages in the amount of commissions owed, would be inadequate to make Plaintiffs whole. Plaintiffs therefore fail to state a cause of action for equitable accounting.

### IV. Conclusion

Plaintiffs have failed to show the exercise of personal jurisdiction over Defendants Bonorino, McPartlin, and MG would be proper. Further jurisdictional discovery as to these Defendants is unwarranted. As to Defendant LSFL, Plaintiffs have shown that jurisdictional discovery is appropriate to permit the confirmation and discovery of relevant facts sufficient to support personal jurisdiction. However, they have failed to state a claim against LSFL. Accordingly, it is hereby

ORDERED and ADJUDGED that

1. The Motions to Dismiss [DE 11, 23, 41] are GRANTED.

2. Plaintiffs' claims against Defendants Bonorino, McPartlin, and MG are DISMISSED with prejudice.

3. Plaintiffs' claims against Defendant LSFL are DISMISSED without prejudice with leave to file an Amended Complaint.

4. In the event Plaintiffs intend to file an Amended Complaint against LSFL, limited jurisdictional discovery as to the activities of LSFL and its directors in Florida shall be permitted in the form of written discovery and the deposition of Laken Mitchell.

5. All disputes regarding jurisdictional discovery shall be REFERRED to U.S. Magistrate Judge Chris M. McAliley.

6. An Amended Complaint shall be filed on or before May 18, 2009.

7. Failure to file an Amended Complaint shall result in the dismissal of this case with prejudice.

8. The Motion to Strike [DE 53] is DENIED as moot.